**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

---

**ERNEST SUTTLES,**

     **Plaintiff**

**v.**                            **Case No. _____**
                                        **JURY TRIAL DEMANDED**

**UNIVERSITY OF MEMPHIS,**

     **Defendant**

---

**COMPLAINT FOR VIOLATIONS OF TITLE IX,**
**DENIAL OF FOURTEENTH AMENDMENT DUE PROCESS AND**
**BREACH OF CONTRACT**

---

COMES NOW THE PLAINTIFF, ERNEST SUTTLES, by and through undersigned counsel of record, who complains of breach of contract, denial of his Fourteenth Amendment Due Process Rights, and for violations of title IX against the Defendant, University of Memphis and in support thereof would state as follows:

**THE NATURE OF THE ACTION**

This action arises from an egregious miscarriage of justice against Plaintiff through the University of Memphis' ("the University") flawed and biased Title IX sexual misconduct process, carried out under a presumption of guilt, and willful ignorance of major inconsistencies in the complainant, "Jane Roe's," false allegations of nonconsensual sexual contact against Plaintiff. Concerns with Jane Roe's credibility were never raised by University investigators, nor was her account questioned, and vital witnesses were ignored, because the University of Memphis trains its staff to adopt a trauma-informed approach which discourages the thorough questioning of complainants in the sexual misconduct process to avoid further trauma.

Without sufficient supporting evidence, the University suspended Plaintiff from the campus—who was only 1 year away from completing his Master's Degree—for a period of time now spanning almost two years. At the time, Plaintiff—who in 2013 was the Glenn Jones Defensive Scout Team Player of the Year, a 2017 Scholar Athlete of the month, a defensive starter for the University of Memphis football team and a member of the winningest recruiting class in the history of Tiger Football, was enrolled and on his way to a degree and a chance at a career in the NFL.  As a result of this allegation and suspension, he lost his scholarship, reputation, job prospects and a potential career in the NFL.  This lawsuit comes as a result of those losses.

## JURISDICTION AND VENUE

1. This Court has federal question, diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under the constitution and statutes of the United States; and (ii) the state law claims are so closely related to the federal law claims as to form the same case controversy under Article III of the United States Constitution.

2. This Court has personal jurisdiction over Defendant University of Memphis on the ground that it is conducting business within and is an instrumentality of the State of Tennessee within the jurisdiction and venue of this Court.

## PARTIES

3. The Plaintiff Ernest Suttles is a resident and citizen of Shelby County, Tennessee. During all times mentioned herein, he was a student at the University of Memphis and a member of the Football team.

4.   The University of Memphis is a publicly funded University in the State of Tennessee.  At all times herein it was an instrumentality of the State of Tennessee and is subject to the jurisdiction of this Court.

## FACTS

### 1.   Mr. Suttles Background and Financial Aid Agreements with the University.

5.   Mr. Ernest Suttles, the Plaintiff, was a highly sought-after football recruit in the high school class of 2013.  He originally committed to the University of Nebraska and thereafter transferred to the University of Memphis.  From the time he enrolled at the University of Memphis, the institution offered him a series of financial aid agreements, in exchange for his participation on the school's football team.

6.   For the 2017-2018 Academic Year the University of Memphis offered the Plaintiff a football scholarship as had been offered every year he had been enrolled.  This agreement was signed by both the Director of Athletics on behalf of the University and by Mr. Suttles.  The date of this agreement was 7/27/17.  As a result of this agreement, the University agreed to provide financial aid to the Plaintiff and agreed to the following conditions and guidelines for that aid in a written financial aid agreement signed by all parties:

**University of Memphis Athletic Grant In Aid Guidelines**
Athletic grant in aid may be reduced or rescinded during the period of the award if a student athlete is found to have engaged in activities in violation of team, academic, Athletic Department, or University policies, as well as all NCAA rules and regulations…..

**NCAA Division I Rules and Regulations Concerning Athletic Aid**

**15.3.4.2 Reduction or Cancellation Permitted**
…(c ) engages in serious misconduct warranting substantial disciplinary penalty…

7.   Furthermore, NCAA regulations specifically mandate that such a reduction or cancellation of aid may only occur after a student -athlete has been provided an opportunity for a hearing per

Bylaw 15.3.2.3. Ernest Suttles agreed to these terms and conditions and relied upon the promises of the University of Memphis to provide the financial aid and due process protections this agreement expressly stated would exist by playing football for the school after signing this agreement.

8. Pursuant to this agreement, the Plaintiff, Ernest Suttles participated in the University of Memphis Football program and maintained all terms and conditions of his financial aid agreement. On or about October 15, 2017 Plaintiff Ernest Suttles was arrested and charged with rape. This allegation was then and is now, completely false. A woman he had been dating previously, hereinafter referred to as "Jane Roe", lodged this accusation.[1]

9. After this accusation was made, the Memphis Police Department posted news of this arrest on its Twitter Account. On the date of the arrest, the University of Memphis was scheduled to play the Navy Midshipmen. Mr. Suttles was at the team hotel preparing for the game that morning. He was arrested on this false rape charge at the team hotel and escorted out of the facility by the Memphis Police Department.

10. By 12:00 p.m. on October 15, 2017, before the Navy game had even been completed, the University of Memphis had taken punitive actions against Mr. Suttles, without notice to him or any advance warning or hearing. Clearly, the University of Memphis made a decision regarding Suttles guilt or innocence: It kicked him off the football team summarily by halftime of the Navy game. In doing so, University of Memphis issued the following statement flatly stating that Suttles had committed a violation of the University of Memphis team rules:

> "…Ernest Suttles has been dismissed from the University of Memphis football team for a violation of team rules in an off campus incident. As was communicated in an earlier statement, Settles has been removed from campus while this matter is reviewed by the Office of Student Accountability, Outreach and Support for

---

[1] Jane Roe is a pseudonym.

violations of the UofM Student Code of Conduct. During the ongoing investigation, no additional comments will be made…"

11. On Monday October 16, 2017, before Mr. Suttles had posted his bond on the criminal complaint the University of Memphis issued a "Notice of Complaint" by way of an email to him. This Notice of Complaint advised him of the charge made and of the procedure to contest this allegation.

12. Additionally, on October 16, 2017 the Office for Institutional Equity at the University of Memphis emailed one of the Plaintiff's professors to explain the reason that he was unable to attend classes.  This email clearly stated that he was barred from attending classes due to their investigation, which at that time, had not been completed.  In fact, this investigation would never be completed and remains incomplete to this day.

13. One immediate sanction levied by the University of Memphis was to bar Ernest Suttles from attending his classes or even setting foot on the campus of the University of Memphis.  This, despite the fact that the accuser, Jane Roe, was not enrolled in ANY of the same classes he was enrolled in, did not frequent any of the buildings he was required to travel to for class and did not share the same major.   In fact, shortly after this accusation was levied, Jane Roe left campus and disenrolled from the University of Memphis by the Spring 2018 semester. Nonetheless, the Plaintiff was still was restricted from attending classes or being on the campus of the University of Memphis.  These sanctions were never lifted, and the Plaintiff is still not allowed on campus to this day.

14. Pursuant to the Notice of Complaint, the University of Memphis promised to investigate the allegations of rape.  The Plaintiff cooperated with this investigation.  In furtherance of that cooperation, the Plaintiff informed the University investigators, that his roommate was present at the time of the alleged offense and would provide exculpatory information.  This witness'

information would be that no incident occurred in the home on the date alleged by Jane Roe. Inexplicably however, the University's investigators never interviewed this witness before or after imposing what it called, "interim measures" against the Plaintiff, barring him from campus, kicking him off the football team and branding him as a rapist in public.

15. As of Monday January 22, 2018 the University of Memphis and its lead investigator Kenny Anderson were still promising to complete the investigation. He emailed the Plaintiff and advised that the interim sanctions could stay in place even if he completed his report:

> Earnest:
>
> I still anticipate completing my report by the end of next week, but I wanted to alert you to the fact that it is not the end of the process necessarily. Both parties will have a right to appeal my findings and that would extend the process and interim measures that are currently in place. Also, if a policy violation was established by the investigation (hypothetically mentioned here only for clarity sake), then the Office of Student Conduct, Outreach and Accountability would determine any sanctions and both parties would also have the right to appeal their decision.
>
> I explain all of that to say that the completion of the process could last an additional month if either party utilizes their appeal rights. Thus, I wanted to provide this information so you could make a fully informed decision regarding your academic options.
>
> Sincerely,
>
> Kenneth P. Anderson
> Director | Title IX Coordinator
> Office for Institutional Equity

16. This email made it clear to the Plaintiff that there would be no hearing, beyond the initial interview conducted by Mr. Anderson and that he would have to be subjected to the interim sanctions while an appeal was filed, again, before a final adjudication of this complaint. All of this was months after the initial notice of complaint. Finally, even this email was inaccurate because Mr. Anderson NEVER completed his report and there never was an appeal. The case remains open.

**2. <u>Policies In Place at the University of Memphis regarding Sexual Misconduct</u>**

17. Despite how this investigation was conducted in reality, there was a policy that existed at the University of Memphis which explained its Sexual Misconduct Policy.  At the time of the incident the University of Memphis had enacted Policy GE 2031 – Sexual Misconduct and Domestic Violence Policy.  This policy has scant information in it to protect the due process rights of the accused.

18. For example, in that policy, the University spells out the training it gives its employees and designees involved in the investigation or adjudication of alleged violations of the policy. This training makes no mention of protecting any rights of the accused:

> **Training of University parties**. All University employees or designees involved in the investigation or adjudication of alleged violations of this policy will receive annual training on issues related to domestic violence, dating violence, sexual assault, and stalking and the process for conducting an investigation and hearing that protects the safety of complainants and promotes accountability of members of the University community.

19. Additionally, Policy GE2031 states that the University will make all reasonable efforts to resolve or conclude the investigation and resolve the complaint within sixty calendar days.  It states:

> **Time Frames**. All time frames expressed in this policy are meant to be guidelines rather than rigid requirements. Every reasonable effort shall be made to conclude the investigation and resolve the complaint within sixty (60) calendar days following receipt of the complaint. Within this sixty (60) day time frame, it is expected that the Investigator will conclude the investigation, prepare a written report and finding, and notify the parties in writing of the determination. This timeframe does not include any appeal as the result of a request by either party. If an appeal hearing is requested, every reasonable effort shall be made to conclude the appeal process within thirty (30) days following the University's receipt of the appeal request. If the Investigator or Hearing Officer determines that additional time is needed, both parties shall be notified in writing of the delay, the anticipated date that the investigation or hearing will be concluded, and the reasons for such delay. If either party determines that additional time is needed, that party shall request such in writing to either the Investigator (if no initial determination has been

made) or Hearing Officer (if a request for hearing has been received by the institution). The written request for additional time shall include the reasons for the requested delay and the number of additional days needed.

20. The fact that these polices contained no protections for the rights of the accused was compounded by the way the investigation into this incident was conducted. First, the Plaintiff gave a statement to the University of Memphis after he was released from jail. In that statement he denied raping Jane Roe. He also provided to the University of Memphis investigators the name and contact information for the only witness to the event, Christian Johnson. The University of Memphis investigators failed to follow up with this witness, failed to take a statement or even call.

21. Once an interview was conducted of the Plaintiff by the investigators for the University of Memphis, it was clear they had the wrong date or had been given the wrong date for this alleged incident. This matter was corrected only after the Plaintiff himself, advised the University of Memphis that their information was incorrect, demonstrating his cooperation with the University's process.

22. After a meeting with Kenneth Anderson, the Title IX coordinator, and Natasha Dexter, no decision was rendered by the University of Memphis within sixty days of the Notice of Complaint. As of this date, there has never been a decision regarding this Notice of Complaint. Therefore, the Plaintiff has been unable to appeal for over twenty months. Nonetheless, during the time this matter has been pending, all of the so-called "interim restrictions" put in place have been applied for the entire time period and have never been rescinded. The specific restrictions were:

   1) The Plaintiff has been barred from physically being on the campus of the University of Memphis;

2) He has been barred from taking any classes other than through remote means;

3) He has been barred from taking in person exams

4) His financial aid agreement was cut off, leaving him without money and means to pay any of his expenses;

5) Kicked off the football team.

23. These restrictions have had a devastating effect on the Plaintiff; first the press release of the University of Memphis was rebroadcast around the country, effectively branding the Plaintiff has a rapist. Secondly after publishing this accusation, the Plaintiff's opportunities for an NFL career vanished: he stopped receiving any interest regarding potential senior bowl invites or any other activities which could have brought him a career path into the NFL.

24. The Plaintiff finally received a Master of Business Administration degree through his online study at the University of Memphis, which he completed on his own without the financial aid he was promised by the University. However, he was unable to gain employment using that degree due to the stigma of the rape allegation published by the University of Memphis. The Plaintiff has been forced to obtain employment at below the salary his educational level would demand in the open market if not for the public shaming conducted by the University of Memphis from its press releases and ostracization. The press release from the University regarding this case and the Title IX investigation was rebroadcast and disseminated through national wire services and national internet news agencies, giving it wide circulation and spreading the image of the Plaintiff as a rapist nationwide.[2]

**3.   The University of Memphis' Response to a White Male Student Accused of Rape is Markedly Different than the Response to the Charge involving the Plaintiff**

---

[2] https://www.espn.com/college-football/story/_/id/21023263/ernest-suttles-memphis-tigers-charged-rape-dismissed-team

25. The University of Memphis has not acted punitively and arbitrarily against other students that have been accused of rape.  Sadly, this divergent approach by the University has been applied on the basis of the race of the accused.  In an identical case, a 20 year-old white male student was allowed to attend classes after an incident in which he was accused of raping another student, which allegedly happened in a private home in April 2017.  He specifically was allowed to attend classes after he was indicted in August 2017, unlike the Plaintiff.  As of October 2017, he was still allowed to attend classes in person and was not subject to the "interim measures" the University of Memphis employed against Suttles.[3]

26. In fact, the statement the University of Memphis issued in response to this rape allegation against a white male was markedly different than the one issued when a black man, ( i.e., the Plaintiff) was accused of rape.  The statement in the case involving a white male alleged assailant issued by U of M President David Rudd, in the midst of campus protests against this student's presence on campus, was as follows:

> Dear Campus Community:
>
> It is deeply disturbing whenever there are reports of potential criminal behavior that involve and impact our students and our campus. The safety of our students, and all on our campus, is paramount. When reports of potential criminal behavior emerge, the University of Memphis follows a deliberate series of steps to ensure safety, guard confidentiality of all involved, and allow for due process. In all reports of potential criminal behavior, we encourage and support the reporting party to pursue criminal charges, related potential investigation and potential prosecution. In cases where criminal charges are filed and an investigation is initiated by the local police for incidents that occur off campus, the UofM is dependent on the findings of that investigation in order to take action if one of our students is involved. A complainant can choose to hold their campus matter in abeyance while the criminal matter is proceeding. When evidence emerges and the fact pattern is established, the UofM is able to take definite action consistent with the legal requirement of due process. Over the past several years we have removed students from our campus when the evidence and fact pattern supports such an action. We will certainly

---

[3] https://www.commercialappeal.com/story/news/crime/2017/10/12/alleged-rape-cases-roil-university-memphis-campus/756565001/

continue to do so, but we will also do so in accordance with local, state and federal laws.

 While investigations are being completed and evidence gathered, either on campus or by the local police, the University of Memphis provides support, services and a range of resources to those impacted by potential criminal behavior. We are a community and country governed by the rule of law, and we will follow those laws and provide due process throughout. When the facts of investigations are established and evidence gathered, we have not hesitated to take the harshest position possible for criminal activity on our campus. The University of Memphis will continue to do so. If you have questions or concerns, please do not hesitate to reach out.

Regards,

M. David Rudd
President/Distinguished University Professor

27. These "respect the rule of law" comments were absent in the press release regarding the arrest of Ernest Suttles.   The commitment to due process, expressly stated in this release is conspicuously absent in the press release regarding Ernest Suttles.   The Statement in full was as follows:

> "…Ernest Suttles has been dismissed from the University of Memphis football team for a violation of team rules in an off campus incident. As was communicated in an earlier statement, Settles has been removed from campus while this matter is reviewed by the Office of Student Accountability, Outreach and Support for violations of the UofM Student Code of Conduct. During the ongoing investigation, no additional comments will be made…"

28. This statement ended Ernest Suttles football career forever and branded him as a rapist without the presumption of innocence.

## COUNT I

### Violation of Title IX of the Education Amendments of 1972

29. Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

30. Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

31. Title IX of the Education Amendments of 1972 applies to all public and private educational institutions that receive federal funding, which includes Defendant University of Memphis.

32. The University of Memphis is part of the Tennessee State Board of Regents Systems, with its principal administrative offices in Knoxville, Tennessee. The University of Memphis is authorized, supervised and funded by the State of Tennessee pursuant to the Tennessee Constitution. It is also funded by the Federal Government and received

33. Students attending public universities such as the University of Memphis who have been accused of sexual misconduct, have a right to due process under Title IX. See U.S. Dep't of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX (2001) at 22 (the "2001 OCR Guidance"); April 2011 Dear Colleague Letter at 12.

34. Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (emphasis added). Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.[4]

---

[4] See generally U.S. Dep't of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX (2001) at 19-20, 21 & nn. 98-101.

35. The "prompt and equitable" procedures that a school must implement include, at a minimum:

    i. "Notice . . . of the procedure, including where complaints may be filed";

    ii. "Application of the procedure to complaints alleging [sexual] harassment...";

    iii. "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

    iv. "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

    v. "Notice to the parties of the outcome of the complaint......"

36. Title IX Coordinators should not have a conflict of interest. "For example, serving as Title IX coordinator and a disciplinary hearing board member may create a conflict of interest." April 2011 Dear Colleague Letter at 7; August 2015 Dear Colleague Letter at 2-3.

37. Title IX may be violated by a school's imposition of university discipline where race is a motivating factor in the decision to discipline.

38. In this case the University of Memphis breached its duties to the Plaintiff under Title IX. It committed a series of acts which brazenly violated the Plaintiff's rights and caused him damage which continue as of the date of the filing of this Complaint.

39. The University of Memphis breached the duty to the Plaintiff by failing to complete the investigation of this complaint within sixty days, as required by its own policy and by the provisions of Title IX. Once the Plaintiff received a Notice of Complaint in October 2017, the University had a responsibility under Title IX and its own policy to designate reasonably prompt timeframes for the major parts of the investigation. Its own policy sets out sixty days as the amount of time allotted for this investigation and resolution. It failed to meet this requirement as the investigation was never concluded. There has been no written finding issued to the Plaintiff.

40. The University never conducted a fair and thorough investigation of the Complaint. As noted previously, there was only one possible eyewitness who could have been interviewed, Christian Johnson. However, for whatever reason the University of Memphis' investigators and Title IX Coordinator Kenneth Anderson never contacted this witness. The failure to even interview or place a telephone call to the only potential witness to the event renders any investigation incomplete on a basic and fundamental level.

41. Additionally, the University of Memphis never conducted a hearing of this Title IX complaint, in blatant violation of the Act. As a result of this failure to conduct a hearing, the Plaintiff was not allowed to attend the hearing wherein the Complainant testified, and he did as well. He was not allowed the opportunity to hear the testimony or the statement given by Jane Roe. He was not allowed to have his counsel present at a hearing to confront his accuser or cross-examine her statement. The failure to conduct a hearing denied the Plaintiff of the fundamental bedrock principle of due process. The University of Memphis' policy simply ignored this right.

42. The University of Memphis violated Title IX by employing the "interim sanctions" against Ernest Suttles without the benefit of a hearing or an opportunity to defend himself against the charges. As noted previously within hours of being arrested and before the Notice of Complaint was issued on Monday October 17, 2017 the University kicked Mr. Suttles off the Football team. His financial aid was therefore cut before he could post his bond and leave jail during that first 48 hours after being arrested. All of this was in clear violation of the financial aid agreement and denied him the due process that Title IX guaranteed him.[5]

---

[5] Although Mr. Suttles received the Notice of Complaint on the Monday following the Memphis-Navy Football game, it is clear that the decision to deny him due process was made earlier. The date of the Notice of Complaint was issued and signed by Kenneth Anderson was October 14, 2017, even before Suttles was aware of the charge.

43. Based on the foregoing, University of Memphis failed to conduct an adequate, reliable, and impartial investigation of Jane Roe's complaint. Due to this failure to conduct an adequate, reliable and impartial investigation, the Plaintiff suffered damages, which include but are not limited to, psychological damages and counseling and treatment expenses, loss of his financial aid and income, embarrassment and humiliation due to his banishment from the University and other damages to be enumerated at trial.

## COUNT II

### 42 U.S.C. §1983: Denial of Fourteenth Amendment Due Process

44. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

45. The University of Memphis was responsible for implementing the Student Conduct Code, and enforcing the financial aid agreement and adhering to NCAA regulations which were incorporated by reference into that agreement with the Plaintiff.  Additionally, it was responsible for providing the Plaintiff due process under Title IX in regard to the Notice of Complaint.

46. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." A similar right is stated in the Fifth Amendment to the United States Constitution.

47. Section 1983 of Title 42 of the U.S. Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

48. A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

49. Plaintiff's constitutionally protected property interest in his continued enrollment at University of Memphis and to be free from arbitrary suspension and dismissal arises from the policies, courses of conduct, practices and understandings established by University of Memphis.

50. Plaintiff's constitutionally protected property interest further arises from the express and implied contractual relationship between University of Memphis and Plaintiff.

51. It is well established that Fourteenth Amendment due process protections are required in higher education disciplinary proceedings.

52. University of Memphis, a state university, is part of a system of public universities created by the State of Tennessee and administered by the State Board of Regents.  The University of Memphis is authorized, supervised and funded by the State of Tennessee. Therefore, the University of Memphis has a duty to provide its students equal protection and due process of law by and through any and all procedures set forth by the University.

53. Plaintiff had obeyed all institutional rules when he was wrongly suspended from University of Memphis and the University of Memphis football team.

54. In resolving the Notice of Complaint filed herein, the Plaintiff was entitled to a process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing. Plaintiff was deprived of a fundamentally fair process. Plaintiff's right to due process was violated when the University of Memphis suspended him without notice and a hearing due to the complaint of Jane Roe, and punished him and publicly branded him as a rapist and a violator of team rules.

55. The University of Memphis deprived Plaintiff of his liberty and property interests without affording him basic due process, including but not limited to, his right to be notified of the charges against him, his right to a fair adjudication, his right to be heard by an impartial factfinder, to question his accuser and to have a speedy and prompt resolution of the charges against him within a reasonable amount of time.  The liberty and property interests include but was not limited to the restriction of his ability to enter and move about a public university campus, the deprivation of his financial aid, to which he had a contractual right to be awarded, and the loss of any and all rights and privileges he was entitled to enjoy as a student athlete at the University of Memphis.

56. As a direct and foreseeable consequence of the foregoing deprivations of due process, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries and other direct and consequential damages as outlined previously in this Complaint.  Specifically the Plaintiff has been damaged by a) the loss of financial aid which he was entitled to as a result of his financial aid agreement, in an amount to be proven at trial; 2) the loss of employment opportunities from his attaining the Masters of Business Administration Degree, due to the public branding of him as a rapist by the University of Memphis; 3) the loss of any hope of a career as a result of being kicked off the football team at the University of Memphis as a senior, literally months before the pro day and senior bowl honors; 4) counseling and therapy costs incurred as a result of being traumatized by the conduct of the University of Memphis; and 5) any and all other damages in any amounts to be proved at trial.

## COUNT III
**Breach of Contract Against University of Memphis**

57. Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

58. At all times relevant hereto, a contractual relationship existed between University of Memphis and Plaintiff through a) the Plaintiff's Financial Aid Agreements with the University of Memphis;  and b) University of Memphis's policies and procedures governing the student disciplinary system, including but not limited to the Student Conduct Code and the University of Memphis Sexual Harassment Policy, GE2031.

59. Through the documents it publishes and provides to students, University of Memphis makes express contractual commitments to students involved in a disciplinary process, as well as in this case, student athletes with financial aid agreements.  One specific commitment is to fulfill the financial aid obligations and not cease those payments unless and until the student athlete has been afforded due process as required by that agreement, and the applicable NCAA regulations.

60. Based on the foregoing, University of Memphis created express and implied contracts with Plaintiff that he would be afforded due process before being removed from financial aid and before suffering any interim restrictions such as those employed in this case.

61. Based on the aforementioned facts and circumstances, University of Memphis breached express and/or implied agreement(s) with Plaintiff by the commission of the following acts: a) it suspended the Plaintiff from physically entering the campus of the University of Memphis without notice and a hearing, when such restriction was not warranted or necessary under the circumstances; especially when the Plaintiff had no classes with the complainant and did not even attend classes in the same building at any time; b) when it cut off the Plaintiff's financial aid, in violation of the financial aid agreement which specifically granted him due process; 3)

when it failed to provide due process by conducting a hearing on the complaints of Jane Roe; and d) when it failed to investigate these charges which would include interviewing the Plaintiff's exculpatory witness.

62. As a direct and foreseeable consequence of the foregoing breaches, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries and other direct and consequential damages as outlined previously in this Complaint. Specifically the Plaintiff has been damaged by a) the loss of financial aid which he was entitled to as a result of his financial aid agreement, in an amount to be proven at trial; 2) the loss of employment opportunities from his attaining the Masters of Business Administration Degree, due to the public branding of him as a rapist by the University of Memphis; 3) the loss of any hope of a career as a result of being kicked off the football team at the University of Memphis as a senior, literally months before the pro day and senior bowl honors; 4) counseling and therapy costs incurred as a result of being traumatized by the conduct of the University of Memphis; and 5) any and all other damages in any amounts to be proved at trial.

63. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

1. On the first count for violation of Title IX of the Education Amendments of 1972, a judgment against University of Memphis awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of

educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements and an injunction against University of Memphis as a result of University of Memphis's violation of Title IX, which resulted in an unduly severe and unwarranted sanction which continues to injure Plaintiff's reputation and right to continue his education, an injunction should issue directing University of Memphis to:

> (i) expunge Plaintiff's disciplinary record;
>
> (ii) remove any record of Plaintiff's suspension from his education file;
>
> (iii) permanently destroy any record of Jane Roe's complaint; and

2. On the second count for violation of constitutional due process under 42 U.S.C. § 1983, an injunction directing the University of Memphis and Kenneth Anderson, Title IX Coordinator to

> (i)      expunge Plaintiff's disciplinary record;
>
> (ii)     remove any record of Plaintiff's suspension from his education file; and
>
> (iii)    (iii) permanently destroy any record of Jane Roe's complaint;

3. On the third count for state law breach of contract, a judgment against University of Memphis awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

4. An award to the Plaintiff of such other and further relief as the Court deems just, equitable and proper.

## **JURY DEMAND**

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

RESPECTFULLY SUBMITTED,

JOHNSON & JOHNSON, P.L.L.C.

A Professional Limited Liability Company

 /s/Curtis D. Johnson, Jr.
CURTIS D. JOHNSON, JR.  ( Bar No.015518)
Suite 1002, 1407 Union Avenue
Memphis, Tennessee  38104
Telephone:  (901) 725-7520
Facsimile:  (901) 725-7570
cjohnson@johnsonandjohnsonattys.com

 /s/Florence J. Johnson
FLORENCE M. JOHNSON
Suite 1002, 1407 Union Avenue
Memphis, Tennessee  38104
Telephone:  (901)725-7520
Facsimile:  (901)725-7570
fjohnson@johnsonandjohnsonattys.com