IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ERNEST SUTTLES, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-02502-JTF-cgc |
| | ) | JURY DEMAND |
| UNIVERSITY OF MEMPHIS, | ) | |
| KENNETH P. ANDERSON, in his | ) | |
| individual capacity, and DR. DAVID | ) | |
| RUDD, in his individual capacity, | ) | |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF THE UNIVERSITY OF MEMPHIS'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

The University of Memphis ("the University") files this memorandum of law in support of its motion to dismiss the First Amended Complaint (ECF #12) in accordance with Federal Rule of Civil Procedure 12(b) and Local Rule 12.1.

**FACTUAL BACKGROUND**

Plaintiff Ernest Suttles is a former student-athlete of the University. (ECF # 1, at ¶ 4.) On or around October 15, 2017, Plaintiff was arrested and charged with raping a fellow student-athlete of the University. (*Id.* ¶ 11.) In light of the charges, the University dismissed Plaintiff from its football program and rescinded Plaintiff's athletic scholarship. (*See id.* ¶¶ 9, 25.) On October 16, 2017, the University sent a "Notice of Complaint" to Plaintiff and advised him that a disciplinary proceeding had been brought against him for violation of the University Student Code of Conduct. (*See id.* ¶¶ 13–14.) The University informed Plaintiff that interim measures, which included a prohibition from entering the University campus for any purpose, would be applied to him during

1

the pendency of the disciplinary proceedings. (*Id.* ¶¶ 17, 25.) According to the Complaint, the University began an investigation into the Notice of Complaint, but never completed its investigation. (*Id.* ¶¶ 17–19.) As a result, the interim measures remained in place until Plaintiff graduated from the University. (*Id.* ¶ 25.)

Plaintiff brings three claims against the University. First, Plaintiff alleges that the University violated Title IX of the Education Amendments Act of 1972 by failing "to conduct an adequate, reliable, and impartial investigation." (*Id.* ¶¶ 34–52.) Plaintiff requests an award of money damages from the University. (*Id.*, "Prayer for Relief," ¶ 1.) Second, Plaintiff brings a Section 1983 claim against the University and alleges that the University violated the Fourteenth Amendment by depriving Plaintiff of property and liberty interests without providing him appropriate due process. (*Id.* ¶¶ 53–65.) Plaintiff requests injunctive relief related to Plaintiff's educational records from the University. (*Id.*, "Prayer for Relief," ¶ 2.) Finally, Plaintiff alleges that the University breached a contract with Plaintiff by rescinding Plaintiff's athletic scholarship. (*Id.* ¶¶ 66–72). Plaintiff again requests an award of money damages from the University. (*Id.*, "Prayer for Relief," ¶ 3.)

## LEGAL STANDARD

The University moves to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter. Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In this case, Defendant makes a facial attack. *See Muhammad v. Azar*, No. 18-cv-2857-MSN-tmp, 2019 WL 4228915, at *4 (W.D. Tenn. Aug. 19, 2019) (report and recommendation) (Pham, M.J.), adopted 2019 WL 4228901, at *1 (W.D. Tenn. Sept. 5, 2019) (Norris, D.J.) (defense of sovereign immunity is a facial attack because the

defense does not depend of the factual validity of any of the complaint allegations). A facial attack is a challenge to the sufficiency of the pleading itself. When reviewing a facial attack, the court must take the material allegations of the complaint as true and construe the allegations in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974).

## ARGUMENT

I. **THE UNIVERSITY HAS ELEVENTH AMENDMENT IMMUNITY AGAINST PLAINTIFF'S SECTION 1983 CLAIM AND BREACH OF CONTRACT CLAIM.[1]**

The Eleventh Amendment of the United States Constitution bars suits in federal court by private parties against state agencies. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 712 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). Eleventh Amendment immunity extends "to any suit in law *or equity*, commenced or prosecuted against one of the United States." U.S. CONST. amend. XI (emphasis added); *see also Seminole Tribe*, 517 U.S. at 58 ("[T]he relief sought by a plaintiff suing a State is irrelevant to the question of whether the suit is barred by the Eleventh Amendment.") The University is "an arm of the State of Tennessee" for the purposes of Eleventh Amendment immunity. *See Boyd v. Tennessee State Univ.*, 848 F. Supp. 111, 113–14 (M.D. Tenn. 1994) ("There is no serious question that the defendants here [state universities] . . . are state agencies covered by the state's grant of sovereign immunity."); Tenn. Code Ann. § 49-8-101(a) (establishing a state university and community college system that includes the University of Memphis).

A suit against an unwilling state university is permitted by the Eleventh Amendment only if: (1) Congress has unequivocally expressed its intent to abrogate the immunity; and (2) Congress

---

[1] While Plaintiff's response to the original motion to dismiss is ultimately a moot pleading (ECF #13), Plaintiff seems to agree that the University is immune to these claims. (ECF #13, at *2 ("[I]t is undisputed that the University of Memphis is an instrumentality of the state of Tennessee and entitled to sovereign immunity…").) Nonetheless, the "Prayer for Relief" in Plaintiff's First Amended Complaint requests relief against the University for both the Section 1983 claim and the breach of contract claim. (ECF #12, "Prayer for Relief," ¶¶ 2–3.)

3

has acted pursuant to a valid exercise of power. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Congressional abrogation of state sovereign immunity occurs "only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (internal quotations and citation omitted).

A suit against a state university is also permitted by the Eleventh Amendment if the state waives its immunity. Waiver of immunity can occur in two circumstances: (1) when a state voluntarily invokes federal court jurisdiction, *Gunter v. Atl. Coast Line R. Co.*, 200 U.S. 273, 284 (1906), or (2) when the state makes a "clear declaration" of intent to submit to federal court jurisdiction, *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). A state's consent to suit in federal court must be "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

Plaintiff's Section 1983 claim against the University is barred by the Eleventh Amendment. Congress did not abrogate the states' Eleventh Amendment immunity by enacting Section 1983, *see, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–71 (1989), and the State has never made a "clear declaration" of intent to submit to federal court jurisdiction for claims under Section 1983, *see Chaudhuri v. State of Tenn.*, 767 F. Supp. 860, 862–83 (M.D. Tenn. 1991). Plaintiff's request for equitable relief against the University does not impact the University's immunity. *See* U.S. CONST. amend. XI; *Seminole Tribe*, 517 U.S. at 58.

Likewise, Plaintiff's breach of contract claim is barred by the Eleventh Amendment. Congress has never abrogated the states' Eleventh Amendment immunity for breach of contract claims, and the State has never made a "clear declaration" of intent to submit to federal court jurisdiction for breach of contract claims. Although the State has waived its sovereign immunity

to be sued for breach of contract in certain state courts, the State has not waived its Eleventh Amendment immunity in federal court. *See Giordadze v. Tenn. Tech. Ctr.*, No. 2:06-cv-264, 2007 WL 2327034, at *2–4 (E.D. Tenn. Aug. 10, 2007) (*citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 n.9 (1984) ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts.")).

Plaintiff's Section 1983 claim and breach of contract claim against the University should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II. PLAINTIFF'S TITLE IX CLAIM AND SECTION 1983 CLAIM ARE BARRED BY THE STATUTE OF LIMITATIONS.

A. Plaintiff's Title IX Claim and Section 1983 Claim Accrued Before August 5, 2018.

Both Title IX claims and Section 1983 claims have a one-year statute of limitations in Tennessee. *Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 730, 733 (M.D. Tenn. 2018). Courts have ordinarily applied the "discovery rule" to determine when Title IX claims and Section 1983 claims accrue. *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp. 2d 662, 668 (E.D. Ky. 2009). According to the discovery rule, "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Plaintiff filed his Complaint on August 5, 2019,[2] so any injuries that he knew or should have known about before August 5, 2018 are barred by the one-year statute of limitations.

Plaintiff's alleged injuries were the result of three separate decision-making processes: (1) the athletics decisions, (2) the interim measures decisions, and (3) the disciplinary process

---

[2] The University acknowledges that the First Amended Complaint relates back to the date the original Complaint was filed pursuant to Fed. R. Civ. P. 15(c).

5

decisions. First, the athletics decisions resulted in the University dismissing Plaintiff from the football team on October 15, 2017 and rescinding his athletic scholarship at some point between October 15 and October 17, 2017. (ECF #13, ¶¶ 13, 48.) Plaintiff clearly knew or should have known of the alleged injury caused by the University dismissing him from its football team on October 15, 2017. Plaintiff also acknowledges that the terms and conditions of his athletic scholarship were governed by the National Collegiate Athletic Association ("NCAA") Division I Rules and Regulations Concerning Athletic Aid, and that NCAA Bylaw 15.3.2.3 mandates that an athletic scholarship can only be reduced or cancelled *after* a student-athlete has been provided an opportunity for a hearing. (*Id.*, ¶¶ 9–10.) As the allegations in the First Amended Complaint make clear, the University rescinded Plaintiff's scholarship on or before October 17, 2017 without first providing an opportunity for a hearing. (*Id.* ¶¶ 11, 48.) Plaintiff therefore knew or should have known of the alleged injuries caused by the University rescinding his athletic scholarship on or before October 17, 2017. Plaintiff's claims against the University for failure to provide due process prior to dismissing him from the football team and rescinding his scholarship must be dismissed because the claim accrued no later than October 17, 2017, and the claim was not filed until August 5, 2019.

Second, the interim measures decision resulted in the University restricting Plaintiff's access to campus for all purposes, including to attend classes and take exams. (*Id.* ¶¶ 16, 25.) The University imposed the interim measures[3] against Plaintiff by letter on October 14, 2017.[4] (*Id.* ¶

---

[3] Interim measures and accommodations are discussed in the University's sexual misconduct and domestic violence policy, GE2031, (*see* Attach. 1, at *14), which is referenced in the First Amended Complaint. (ECF #12, ¶¶ 22, 67.) The University of Memphis Policy GE2031 is publicly available online at https://memphis.policytech.com/dotNet/documents/?docid=656&public=true, and, for convenience, has been attached to this memorandum as "Attachment 1."

[4] The First Amended Complaint suggests that "the interim measures became permanent the moment the Plaintiff graduated." (ECF #12, ¶ 77.) This is obviously not true. In fact, the interim measures *ended* the moment the Plaintiff graduated because the University cannot enforce provisions in the Code of *Student* Rights and Responsibilities against

6

76.) Plaintiff knew or should have known of the alleged injuries created by the interim measures the day that they were imposed. Plaintiff's claims against the University for failure to provide due process prior to imposing interim measures must be dismissed because the claim accrued on October 14, 2017, and the claim was not filed until August 5, 2019.

Finally, Plaintiff alleges injuries resulting from the disciplinary process decisions. The University expects Plaintiff to argue that the claim did not accrue "until he was no longer subject to student discipline," which was "after he graduated from the University of Memphis." (ECF #13, at *12.) That cannot be true. A due process claim based on a student disciplinary proceeding must accrue at some point before the student graduates. Otherwise, one of the student's primary forms of relief—an order for the University to provide the student due process during the disciplinary proceeding—would always be moot.

The disciplinary process was initiated when the University issued a Notice of Complaint to Plaintiff on October 16, 2017. (ECF #12, ¶ 14.) The University's sexual misconduct and domestic violence policy, Policy GE2031, indicates that "[e]very reasonable effort shall be made to conclude the investigation and resolve the complaint within sixty (60) calendar days following receipt of the complaint. Within this sixty (60) day time frame, it is expected that the Investigator will conclude the investigation, prepare a written report and finding, and notify the parties in writing of the determination." (Attach. 1, at *12, "Complaint Resolution – Time Frames.") On December 15, 2017, Plaintiff knew that the University would not timely conclude the investigation and resolve the complaint, so Plaintiff knew or should have known of his injury at that point. Alternatively, as the First Amended Complaint states, the email from Mr. Kenneth Anderson to Plaintiff on January 22, 2018 "made it clear to the Plaintiff that there would be no hearing until an

---

individuals that are not students. Interim measures only apply to students of the University, and Mr. Suttles is no longer a student.

appeal, beyond the initial interview conducted by Mr. Anderson and that he would have to be subjected to the interim sanctions while an appeal was filed, again, before a final adjudication of this complaint." (ECF #12, ¶ 19.) On January 22, 2018, Plaintiff knew that the University would not grant him a hearing, so Plaintiff knew or should have known of his injury at that point. While it is difficult to determine with certainty when Plaintiff knew or should have known of the alleged injuries created by the disciplinary process decisions, the answer is almost certainly that a reasonable lay person would or should have known to protect his rights *before August 5, 2018*, and that is sufficient to dismiss the claims under the statute of limitations. *See Roberson v. Tennessee*, 399 F.3d 792, 794–95 (6th Cir. 2005).

      B. <u>The Continuing Violations Doctrine Does Not Apply in this Case.</u>

Plaintiff may argue that the continuing violations doctrine allows him to bring his otherwise time-barred claims because the interim measures were in place through his graduation on August 11, 2018. (*See* ECF #12, ¶ 77; ECF #13, at *12, n.1) The continuing violations doctrine should not apply to Plaintiff's claims for at least two reasons. First, the Sixth Circuit has noted that "Courts have been extremely reluctant to apply [the continuing violations] doctrine outside of the context of Title VII." *LRL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995); *see also Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 735 (M.D. Tenn. 2018); *Dibbern v. Univ. of Mich.*, No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich. May 18, 2016). There is no reason for the Court to break precedent in this case by applying the continuing violations doctrine.

Second, the Supreme Court has held that the continuing violations doctrine applies to hostile environment claims involving "repeated conduct" that occurs over "a series of days or perhaps years," but not to "discrete acts" that occur on "a particular day." *Nat'l R.R. Passenger*

*Corp. v. Morgan*, 536 U.S. 101, 115–18 (2002). "Discrete acts" are not actionable under a continuing violations doctrine if they are otherwise time-barred. *Id.* at 113–14. Each of the injuries that Plaintiff has alleged are "discrete acts." Plaintiff was dismissed from the football team, was indefinitely prohibited from entering the university campus, and had his athletic scholarship rescinded on particular days. Plaintiff's allegations do not trigger the continuing violations doctrine. *See Haley*, 353 F. Supp. 3d at 735.

### C. The Statute of Limitations for Plaintiff's Title IX Claim and Section 1983 Claim Should Not Be Equitably Tolled.

The University also expects Plaintiff to argue that the statute of limitations for his Title IX claim and Section 1983 claim should be equitably tolled. (*See* ECF #12, ¶¶ 73–77.) Federal courts apply equitable tolling "sparingly" and it is typically only applied when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000). The Sixth Circuit has identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Id.* (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). Plaintiff has the burden of demonstrating why he is entitled to equitable tolling of the statute of limitations. *Penley v. NPS Int'l, Inc.*, 206 F. Supp. 3d 1341, 1347–48 (W.D. Tenn. 2016) (citing *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004)). Plaintiff has not set forth any facts in his complaint demonstrating that he is entitled to equitable tolling. (*See* ECF #12, ¶¶ 73–77.) The First Amended Complaint does not include any facts indicating that Plaintiff was unaware of the filing requirement, but it does include numerous facts indicating

9

that Plaintiff was *not* diligent in pursuing his rights. For example, he let nearly a year pass between receiving the Notice of Complaint in October 2017 and his graduation in August 2018 without attempting to file suit, (*see* ECF #12, ¶ 14, 77), and then he waited nearly another year between his graduation and filing this lawsuit in August 2019.

Instead, Plaintiff seems to argue that the statute of limitations should be tolled due to fraudulent concealment by the University and its employees. (*See* ECF #12, ¶¶ 73–77); *see also Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 734 (M.D. Tenn. 2018) (noting a distinction between equitable tolling and tolling for fraudulent concealment).

Plaintiff's argument for tolling the statute of limitations due to fraudulent concealment must fail for at least two reasons. First, Plaintiff has not pled "with particularity the circumstances constituting" the fraud. *Id.* (citing Fed. R. Civ. P. 9(b)). "To plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Id.* (quoting *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011)). The First Amended Complaint makes no allegations about what the fraudulent scheme was or what the University's fraudulent intent was. (*See* ECF #12, ¶¶ 73–77).

Second, even if Plaintiff has properly pled fraudulent concealment, the allegations in the First Amended Complaint do not justify equitable tolling of the statute of limitations. "The doctrine of fraudulent concealment allows equitable tolling of the statute of limitations where 1) the defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." *Fillinger v. Lerner Sampson & Rothfuss*, 624 F. App'x 338, 341 (6th Cir. 2015). The First Amended Complaint does not suggest that the University concealed anything

from Plaintiff.  "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry."  *Id.*  Plaintiff cannot plead fraudulent concealment on the theory that the University and its employees did not actively update Plaintiff on the status of the investigation.  The First Amended Complaint also does not suggest that Plaintiff was prevented from discovering the status of the investigation.  He could have contacted the University's Office for Institutional Equity to ask about the status of the investigation, and he could have contacted the University's Office of General Counsel or Office of the President if he suspected that the Office for Institutional Equity had engaged in some type of misbehavior or concealment.  The First Amended Complaint finally suggests that Plaintiff did *not* exercise due diligence in discovering the status of the investigation.  There is no indication that Plaintiff did anything to follow up on the status of his investigation after January 22, 2018 despite it being "made clear" that "there would be no hearing until an appeal" and that "he would have to be subjected to the interim sanctions while an appeal was filed."  (*See* ECF #12, ¶¶ 18–19.)

For those reasons, Plaintiff is not entitled to any type of tolling to the one-year statute of limitations.  Since Section 1983 and Title IX claims were not brought within one-year of their accrual, those claims must be dismissed.

## CONCLUSION

The University of Memphis respectfully requests the Court dismiss the claims against it as set forth in the First Amended Complaint in their entirety for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

s/ Taylor W. Jenkins
**Taylor W. Jenkins, BPR #34906**
Assistant Attorney General
Education and Employment Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-6739
taylor.jenkins@ag.tn.gov

**Jim Newsom, BPR #6683**
Special Counsel
One Commerce Square
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
jim.newsom@ag.tn.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 25, 2019, a copy of the MEMORANDUM IN SUPPORT OF THE UNIVERSITY OF MEMPHIS'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT was filed electronically. Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including:

Curtis D. Johnson, Jr.
JOHNSON & JOHNSON, PLLC
cjohnson@johnsonandjohnsonattys.com

Florence M. Johnson
JOHNSON & JOHNSON, PLLC
fjohnson@johnsonandjohnsonattys.com

                                            s/ Taylor W. Jenkins
                                            Taylor W. Jenkins, BPR #34906