IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

**ERNEST SUTTLES,**

    Plaintiff

v.                                                                                        Case No. 2:19-cv-02502-JTF-cgc
                                                                                          JURY TRIAL DEMANDED

**UNIVERSITY OF MEMPHIS,**
**KENNETH P. ANDERSON, in his**
**Individual capacity, DR. DAVID RUDD,**
**In his individual capacity,**

    Defendant

**ERNEST SUTTLES' RESPONSE IN OPPOSITION TO THE RENEWED MOTION TO DISMISS THE COMPLAINT BY THE UNIVERSITY OF MEMPHIS**

COMES NOW THE PLAINTIFF, ERNEST SUTTLES, by and through undersigned counsel of record, who moves this Court in response to the Motion to Dismiss the Amended Complaint filed herein by the University of Memphis and would state as follows:

The University of Memphis has filed a renewed Motion to Dismiss essentially re-stating the same arguments it made in response to the original complaint. It claims that the 11th Amendment bars the prosecution of the breach of contract and the Section 1983 claims. It also has argued in this motion that the statute of limitations bars the Title IX claims of the Plaintiff, as they claim that the cause of action for the plaintiff accrued on or about October 15, 2017.

1. <u>The Motion to Dismiss the Section 1983 and Breach of Contract Claims against the University of Memphis should be denied, as there are no such claims in the Amended Complaint.</u>

The Plaintiff will address this issue in the Motion to Dismiss for the sake of clarity. The Plaintiff has stated in the response to the original motion to dismiss that he did not offer a breach

of contract claim against the University of Memphis, nor a section 1983 claim. This position was confirmed by the filing of an Amended Complaint. Count II and Count III address the 1983 and the breach of contract claims and neither state a claim against the University of Memphis. These are explicitly addressed to the individual defendants, Kenneth P. Anderson and David Rudd. This motion is erroneous in regard to this issue and should be denied as there is simply no factual basis for it, nor any need to address these points. There is no claim under these counts against this Defendant, the motion to dismiss on this basis should be denied.

2. <u>The Statute of Limitations Claims should be denied, as the Date of Final Adjudication is the date of accrual of such a claim as matter of law.</u>

The motion to dismiss attempts to dissect the Plaintiff's lawsuit into separate and distinct claims under Title IX and they are simply wrong. There is one claim, and there are several acts which occurred creating the cause of action.

The University of Memphis' motion again argues the same discredited theory, that the cause of action under Title IX accrues at some other date, other than the date of final adjudication. They argue ( without legal support ) that the cause of action accrued on the date of the dismissal from the football team (October 14, 2017), when the interim sanctions were imposed (October 17, 2017) or when the 60 day period for investigating complaints expired (December 15, 2017).

However, the Plaintiff's claim in this lawsuit is clearly an "erroneous outcome" claim as stated in Paragraph 44 of the Complaint:

> 44. The outcome of the Title IX process of the plaintiff was erroneous. The Plaintiff specifically avers that due to the failure of Kenneth Anderson, David Rudd and the University of Memphis to complete his investigation in good faith, there never was a hearing of the accusations leveled against him, which raises clear and articulable doubts the outcome of any part of the disciplinary proceeding against Ernest Suttles. Ernest Suttles was never given the opportunity to cross examine Jane Roe or test her version of events in any process resembling a hearing. He specifically avers that as the credibility of the accuser and her accusations was at stake, at a minimum the Defendants should have allowed him to cross examine his accuser and test the credibility. This did not occur. Due to the actions of Kenneth P. Anderson and the

> University of Memphis, a doubt therefore exists as to the outcome for this basic procedural error alone. In addition, the failure to investigate this claim, by specifically ignoring witnesses available to the incident in question, i.e. Ernest Suttles' witness, is a sufficient articulable doubt as to the basic fairness of the process to violate the requirements of Title IX.

As this is explicitly an "erroneous outcome" case, it is likewise undisputed that the date of accrual of such a claim is the date of final adjudication. This was decided in the case of <u>Roberson v. Tennessee,</u> 399 F.3d 792 (6th Cir. 2005).

In Roberson, the 6th Circuit noted that a claim accrues on the date when the plaintiff knew, or through reasonable diligence should have known, of an injury giving rise to his cause of action. <u>Collard v. Kentucky Bd. Of Nursing</u>, 896 F.2d 179, 184 (6th Cir. 1990). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 273 (citations omitted). Courts have taken a common-sense approach to this task, inquiring as "to what event should have alerted the typical lay person to protect his or her rights." *Hughes,* 215 F.3d at 548 (quoting *Dixon v. Anderson,* 928 F.2d 212, 215 (6th Cir.1991)). <u>Roberson v. Tennessee</u> 399 F.3d 792 (6th Cir. 2005) provides clear guidance on exactly what would put a lay person on notice to protect his or her rights: a final adjudication:

> "…The district court was correct in concluding that the typical lay person would have been alerted as to the need to protect his rights before May 22, 2002. While Roberson argues that the Student Promotions Committee had no authority to issue a final decision on his case, and therefore that he had not "exhausted his administrative remedies" until Dr. Stanton issued his letter, it is clear that a typical lay person would have recognized the need to take legal action considerably earlier in the process.
>
> **Specifically, the district court determined the "summer of 2001" to be the latest date on which the limitations period could begin. It reasoned that the decisions of the Student Promotions Committee amounted to a final and formal dismissal from school, and that Roberson's efforts to informally**

**petition various officials about reinstatement demonstrate an awareness that any alleged infringement of his rights had already occurred**.

In response, Roberson seeks to downplay the involvement and authority of the Promotions Committee, arguing at length that the Committee can only "recommend" dismissal, and not order it. Roberson contends that Dr. Franks's letter of April 18, 2002, operated as an official acceptance of the Committee's "recommendation," and that Roberson was not put on notice of the need to protect his rights until Dr. Stanton "upheld" this acceptance. In support of these claims, Roberson cites several passages from the ETSU handbook in which the words "recommend" or "recommendation" are used in reference to the functioning of the Promotions Committee.

Roberson's argument is misplaced. It was not necessary, as he argues, for a decision of the school administration to "conver[t] a mere dismissal recommendation into a concrete expulsion" for Roberson to be aware of the need to protect his rights. Roberson acknowledges that his leave of absence was involuntary, and alleges that he was denied his right to appeal the decision placing him on leave. Whether this decision was made by the Promotions Committee (of right or by usurpation) or by a school official adopting the Committee's "recommendation" is of no import[1]. The fact remains that Roberson was aware of any alleged denial of his rights by the summer of 2001.

While Roberson was undoubtedly wise to utilize the appellate process provided to him following the denial of his plea for *reinstatement* in 2002**, it is clear that his allegations under § 1983 must include a discrete deprivation of rights finalized before this second process even began.** As the Supreme Court explained in a similar (educational) setting, "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)(emphasis in original). Cf. *Morse v. Univ. of Vermont,* 973 F.2d 122, 125 (2nd Cir.1992)("The fact that UVM allowed appellant to continue to take courses and undertook an internal administrative review of its allegedly discriminatory decision has no effect on when the statute of limitations period begins to run."); *Kessler v. Bd. of Regents,* 738 F.2d 751, 754 (6th Cir.1984)(similar result in termination from employment context).

The district court did not err in selecting "the summer of 2001" as the date for the relevant decision. It is clear from the record[2], as well as from Roberson's own statements, that he was dismissed from the ETSU medical program in February of 2001, and that the Student Promotions Committee denied him admission in August of 2001. Nor did the court err in construing Roberson's efforts following the execution of that decision (including "informal" petitions for reinstatement, as well as the letters to Dr. Franks and Dr. Stanton) as efforts at achieving a *post hoc* remedy.

> A reasonable lay person would have acted to protect his rights following the August decision, at the very latest. Because Roberson did not file his complaint until May 22, 2003, the district court correctly dismissed the action as untimely.

Roberson v. Tennessee, 399 F.3d 792 (6th Cir. 2005)**(emphasis added)**.  This case is an unwavering and simple statement as to the issue of the accrual of a Title IX cause of action:  it is and must be the date when Ernest Suttles had been subject to a final adjudication. And as the Plaintiff has noted in this lawsuit, that never occurred.  Kenneth Anderson promised for over twenty months that a final adjudication would occur and that the Plaintiff would have a right to appeal. This never happened.  At no time was Ernest Suttles ever charged with a specific violation of any Student Code of Conduct and no initial determination of a charge or decision was ever rendered.  No expulsion from school occurred.  He was simply given a sanction they called "interim" and then promised the final adjudication under Roberson.  Therefore, without that date of adjudication, there can be no claim at this juncture that the cause of action has accrued. The motion to dismiss should be denied.

3. Equitable Estoppel, not the Continuing Violations Doctrine, Should Toll the Running of the Statute of Limitations.

Equitable estoppel should also bar the statute of limitations argument of the Defendant. Tennessee courts have held that successful assertion of the doctrine of equitable estoppel or equitable tolling requires that the plaintiff show that (1) the defendant knew or should have known that its conduct would induce the Plaintiff to delay filing suit, (2) the plaintiff's reliance on this conduct was reasonable, and (3) the plaintiff's delay was not unreasonable or due to lack of diligence. Northeast Knox Utility District v. Stanfort Const. Co., 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006) (citing Hardcastle v. Harris, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)). Where equitable estoppel has been raised, a court must determine whether the defendant engaged in

conduct specifically designed to prevent plaintiff from suing in time. <u>Fahner v. SW Manufacturing, Inc</u>., 48 S.W.3d 141, 145 (Tenn. 2001).

If there is any doubt as to the date of the accrual of the cause of action here, the issue of equitable tolling should clearly resolve any questions about the timeliness of the filing of the Plaintiff. The Plaintiff alleges explicitly in the Amended Complaint, that the Defendants undertook explicit and clear activities to induce him into believing that he would get a hearing and the opportunity to resolve the claims against him and have the interim sanctions dropped.

When the Defendant, Kenneth P. Anderson sent the October 14, 2017 letter to the Plaintiff, he sought to induce him into believing that the interim restrictions were "pending the completion of their investigation". However, this was false. Kenneth Anderson made no attempt to finish his investigation, as was subsequently discovered over the course of many months. Defendant Anderson produced no written findings and interviewed no witnesses all while claiming that a report was forthcoming. These statements, promising due process, were made to the Plaintiff and to the public, in order to induce the Plaintiff into believing that 1) he was entitled to a hearing and that 2) he was entitled to an investigation. In fact, the University of Memphis, Kenneth P. Anderson and David Rudd provided neither.

Additionally, Defendant David Rudd's public statement released to the press cited in the Amended Complaint in paragraph 30 was also designed to give the illusion of due process. He made false statements that there would be an investigation and a finding but there was not. This also was designed to deceive the Plaintiff AND the public into believing that there would be a fair process. This was fundamentally false. Also, in paragraph 25 of the Complaint, it states that the Plaintiff was prevented from filing suit for twenty months, due to being misled by the Defendants in direct statements to him and in these press statements. Paragraph 77 of the Amended Complaint

states that the interim restrictions became permanent on the date of the Plaintiff's graduation. It also states that because he believed that he would receive due process and that the Defendants never retracted these false statements, he was misled up to the date of filing suit. None of these acts suggest a lack of diligence on the part of the Plaintiff. They demonstrate only a string of false promises by the Defendants and the reasonable reliance of the Plaintiff on the idea of due process.

None of these statements on the face of the complaint support the idea that the date the Plaintiff's cause of action accrued was the date his scholarship or aid was cut off, October 2017. This argument defies logic and ignores the willful acts committed by the Defendants and specifically pled in the Amended Complaint.

## CONCLUSION

The Plaintiff has demonstrated that the various claims made by the University of Memphis to bar this lawsuit are without merit and should not form the basis for the dismissal of the Amended Complaint. As noted earlier, there is no Section 1983 or Breach of Contract Claim against the University of Memphis to dismiss. Secondly, as the accrual of the cause of action of the Plaintiff's Title IX claim is based upon erroneous outcome, the date of final adjudication is the date the claim accrues. There has been no final adjudication in fact, nor has one been pled in the Amended Complaint. Therefore, the Motion to Dismiss in this regard should be denied. Finally, the Plaintiff has explicitly demonstrated in the Amended Complaint that Equitable Tolling applies to this statute of limitations argument, most notably due to the false statements made by the Defendants as to the "due process" and appeal rights the Plaintiff was supposed to receive which ultimately he did not get. Therefore, even if the cause of action accrued, the statute of limitations should be tolled on this basis. The Plaintiff respectfully requests that the Motion to Dismiss by the University of Memphis be denied.

RESPECTFULLY SUBMITTED,

JOHNSON & JOHNSON, P.L.L.C.

A Professional Limited Liability Company


__/s/Curtis D. Johnson, Jr. _____
CURTIS D. JOHNSON, JR.  ( Bar No.015518)
Suite 1002, 1407 Union Avenue
Memphis, Tennessee  38104
Telephone:  (901) 725-7520
Facsimile:  (901) 725-7570
cjohnson@johnsonandjohnsonattys.com


 _/s/Florence J. Johnson_____
FLORENCE M. JOHNSON
Suite 1002, 1407 Union Avenue
Memphis, Tennessee  38104
Telephone:  (901)725-7520
Facsimile:  (901)725-7570
fjohnson@johnsonandjohnsonattys.com

### CERTIFICATE OF SERVICE

I hereby certify that I have this 2nd day of December, 2019, served all parties in this matter with the foregoing pleading by CM/MECF and by sending a copy of the foregoing via U.S. mail, First Class postage prepaid to the following:

    Taylor W. Jenkins
    Assistant Attorney General
    Education and Employment Division
    P.O. Box 20207
    Nashville, TN 37202
    (615) 741-6739
    taylor.jenkins@ag.tn.gov

    David M. Rudolph
    Assistant Attorney General
    One Commerce Square
    40 South Main Street, Suite 1014
    Memphis, TN 38103
    (901) 543-4162

david.rudolph@ag.tn.gov

Jim Newsom, BPR #6683
Special Counsel
One Commerce Square
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
jim.newsom@ag.tn.gov


/s/*Curtis D. Johnson, Jr.*
CURTIS D. JOHNSON, JR.