**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**AT MEMPHIS**

---

**ERNEST SUTTLES,**

**Plaintiff**

**v.**

**Case No. 2:19-cv-02502-JTF-cgc**
**JURY TRIAL DEMANDED**

**UNIVERSITY OF MEMPHIS,**
**KENNETH P. ANDERSON, in his**
**Individual capacity, DR. DAVID RUDD,**
**In his individual capacity,**

**Defendant**

---

**ERNEST SUTTLES' RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT BY KENNETH ANDERSON and DR. DAVID RUDD**

---

**COMES NOW THE PLAINTIFF,** by and through undersigned counsel of Record who, in opposition to the Motion to Dismiss filed herein by Kenneth P. Anderson and Dr. David Rudd would state as follows:

**Preliminary Response**

The individual defendants, Kenneth P. Anderson and Dr. David Rudd have filed motions to dismiss the First Amended Complaint. In these motions, they essentially re-state many of the same arguments raised by the University of Memphis in its first two Motions to Dismiss. They claim that 1) there is no individual liability under Title IX and therefore the Title IX claims should be dismissed against them individually; 2) the Section 1983 claims are barred by the Statute of limitations because they argue that the cause of action accrued on or before August 5, 1983; and 3) that the Breach of Contract claims cannot be cannot be prosecuted against them because they were not parties to the Contract. Finally, they argue that the continuing violations doctrine does

not apply to this case and that the statute of limitations cannot be equitably tolled. All of these arguments are in error, therefore the motion to dismiss must be denied.

First, there is no individual claim raised in the Amended Complaint for Title I liability against Dr. Rudd OR Kenneth P. Anderson. Therefore, as this Court cannot grant a motion to dismiss a claim not made, the motion should be denied as moot.

Secondly, the individual defendants have acted to interfere with the Plaintiff's contract with the University of Memphis, and therefore can likewise be held liable for the breach of that agreement, as the acts committed therein were willful.

The Plaintiff's 1983 claims against the individual defendants, Rudd and Anderson are not barred by the Statute of Limitations because the claims did not accrue without a final adjudication. It has been undisputed that there has never been a final adjudication.

Fourth, equitable tolling bars the running of the Statute of Limitations, even it the claim in fact accrued. This is because the Plaintiff has properly alleged in the Amended Complaint that 1) the Defendants misled him about the conduct of an investigation and 2) his reliance upon their misrepresentations were reasonable. As these are the elements required to pled this claim the Motion to Dismiss should be denied.

**Facts Alleged in the First Amended Complaint**

The Plaintiff, Ernest Suttles is a former star Defensive End for the University of Memphis Football team. In 2017 Suttles was on a football scholarship for the 2017-2018 Academic Year. The date of this agreement was 7/27/17. As part of this agreement, the University agreed to provide financial aid to the Plaintiff and agreed to the following conditions and guidelines for that aid in a written financial aid agreement signed by all parties:

> University of Memphis Athletic Grant In Aid Guidelines Athletic grant in aid may be reduced or rescinded during the period of the award if a student athlete is found

> to have engaged in activities in violation of team, academic, Athletic Department, or University policies, as well as all NCAA rules and regulations…..

ECF 12, Pg. Id. 56. On or about October 15, 2017 Plaintiff Ernest Suttles was arrested and charged with rape. This allegation was then and is now, completely false. After this accusation was made, the Memphis Police Department posted news of this arrest on its Twitter Account. Then, the Defendants, David Rudd and Kenneth Anderson took the actions which have caused them to be named as Defendants in this lawsuit. Dr. Rudd caused this statement to be released about Suttles' arrest:

> "…Ernest Suttles has been dismissed from the University of Memphis football team for a violation of team rules in an off campus incident. As was communicated in an earlier statement, Settles has been removed from campus while this matter is reviewed by the Office of Student Accountability, Outreach and Support for violations of the UofM Student Code of Conduct. During the ongoing investigation, no additional comments will be made…"

Then, in Paragraph 33 of the complaint, it notes that Rudd made further statements at a campus event:

> …This public pressure also spilled over into specific pressure regarding Ernest Suttles. Suttles case elected a media firestorm of coverage due to his position on the football team. David Rudd was pressured specifically about Suttles' case at the on-campus sexual assault forum conducted on October 2017, after Suttles had been dismissed from the football team and barred from campus. He stated during that forum that he wanted a criminal prosecution of the accused.…

Kenneth Anderson, as has been noted previously was cited in the Amended Complaint as the author of the October 14, 207 "interim sanctions" letter to Ernest Suttles. He promised an investigation in that letter and promptly failed to conduct one. Then on January 22, 2018 he emailed the Plaintiff in an attempt to get him to believe that the investigation was ongoing. The amended complaint cites this email directly:

> 18. As of Monday January 22, 2018 the University of Memphis and its lead investigator Kenny Anderson were still promising to complete the investigation.

> He emailed the Plaintiff and advised that the interim sanctions could stay in place even if he completed his report:
>
> Earnest:
>
> I still anticipate completing my report by the end of next week, but I wanted to alert you to the fact that it is not the end of the process necessarily. Both parties will have a right to appeal my findings and that would extend the process and interim measures that are currently in place. Also, if a policy violation was established by the investigation (hypothetically mentioned here only for clarity sake), then the Office of Student Conduct, Outreach and Accountability would determine any sanctions and both parties would also have the right to appeal their decision.

ECF 12, R. ID 59. Plaintiff was still was restricted from attending classes or being on the campus of the University of Memphis. These sanctions were never lifted, and the Plaintiff is still not allowed on campus to this day. All of these factual allegations were made in the Amended Complaint in support of the three causes of action against the Defendants. Two of these causes of action involve David Rudd and Kenneth Anderson. These will be discussed in this response.

**LAW AND ARGUMENT**

Pleading Standard for the Complaint

"A complaint may not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" Wise v. Glickman, 257 F. Supp. 2d 123, 127 (D.D.C. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). All facts alleged in the complaint must be viewed in the light most favorable to the Plaintiffs and all inferences are to be decided in favor of the Plaintiffs. Id.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). In Twombly, the Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Eleventh Circuit, in addressing the pleading standard under Twombly, has stated that "[t]his rule does not 'impose a probability requirement at the pleading stage.'" Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008) (citations omitted); see also F.T.C. v. 1st Guar. Mortg. Corp., No. 09-61840-CIV-SEITZ, 2011 WL 1226213, at *2 (S.D. Fla. Mar. 30, 2011) ("Dismissal is only appropriate where the plaintiff's factual allegations do not 'raise a right to relief above a speculative level.'"). Instead, the "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." Id. at 1309-10 (citations omitted). "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" Id. at 1310 (citations omitted). When considering a motion to dismiss for failure to state a claim, the "allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs." Id. at 1309; see also In re Chiquita Brands Int'l, Inc., Alien Tort Statute & S'holder Deriv. Litig., -- F. Supp. 2d --, No. 10-80652-CIV-MARRA, 2011 WL 2163973, at *6 (S.D. Fla. June 3, 2011) (holding that when construed in the light most favorable to the plaintiffs, plaintiffs had sufficiently stated claim under ATS and TVPA).

In the Sixth Circuit, when evaluating a complaint's sufficiency, courts use a three-step process. First, the court must accept all of the plaintiff's factual allegations as true. Logsdon v. Hains, 492 F.3d 334, 340 (6th Cir. 2007). Second, the court must draw all reasonable inferences in the plaintiff's favor. Id. And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief. Iqbal, 556 U.S. at 679. If it

is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds. *Doe v. Baum,* 903 F.3d 575 (6th Cir. 2018)

1. The argument that a motion to dismiss should be granted in favor of Rudd and Anderson in regard to the Title IX claim is in error because there has been no such claim made.

This ground for the Motion to Dismiss should be denied summarily, because Rudd and Anderson seek a declaration that a claim against that was not raised in the Second Amended Complaint be dismissed. There is simply no individual claim against either Rudd or Anderson under the Title IX count of the Amended Complaint, and frankly it is hard to understand why the University of Memphis says that such a claim has been raised. Furthermore, in response to the motion to dismiss of the University of Memphis, the Plaintiff explicitly noted that the 1983 claim and the breach of contract claims are what has been raised against these defendants. Not a Title I claim. Therefore, the Plaintiff avers that this claim should be denied as moot.

2. The Breach of Contract Count States a Claim for Procurement of Breach of Contract against Kenneth P. Anderson and David Rudd.

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (citation omitted). While possibly not clear, there is a claim made and facts as pled herein constitute a claim for relief as the interference with contract.

"A contract is an agreement between two or more persons that creates obligations that are legally enforceable by the contracting parties." West v. Shelby Cnty. Healthcare Corp., 459 S.W.3d 33, 46 (Tenn. 2014) (citing General Am. Life Ins. Co. v. Armstrong, 185 S.W.2d 505, 507 (Tenn. 1945); Hillsboro Plaza Enters. v. Moon, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)). In order to recover for procurement of a breach of contract, the plaintiff must prove that, there was a legal contract for a designated term, the tortfeasor was aware of the contract, the tortfeasor

maliciously intended to induce a breach of the contract, there was a breach proximately caused by the tortfeasor's acts, and the plaintiff was damaged as the result of the breach. Forrester v. Stockstill, 869 S.W.2d 328 (1994), Supreme Court of Tennessee, at Jackson. January 3, 1994.

The Complaint establishes that there was a written contract for the 2017 2018 academic year, which contains an offer, acceptance and consideration. In addition, the contract is for a specific term, so the first element of this claim is pled directly in the Complaint.

Both Kenneth Anderson and Dr. Rudd knew the Plaintiff was a student at the University as 1) Anderson wrote letters and emails to the Plaintiff, and 2) Rudd issued statements from the University account about him and spoke on his case at a campus event , as alleged in the Complaint. These Defendants are alleged to have fraudulently induced the Plaintiff into believing that an investigation was ongoing and clearly alleges that one did not occur, fulfilling the requirement that the Plaintiff plead " malicious intend to induce a breach of contract" by denying him due process as they knew he was entitled to receive. Finally, the Amended Complaint alleges that no hearing occurred as a result of the actions of Rudd and Anderson. Therefore, every element of this claim is pled in the Amended Complaint and the Motion to Dismiss in this regard must be denied.

3. The Motion to Dismiss must be denied that as the Section 1983 claim did not accrue before August 5, 2018.

As noted in other responses filed by the Defendants, the Plaintiff has cited clear authority that both Title IX claims and Section 1983 claims have a one-year statute of limitations in Tennessee. Jackson v. Richards Medical Co., 961 F.2d 575, 578 (6th Cir.1992); see also Haley v. Clarksville-Montgomery Cty. Sch. Sys., 353 F. Supp. 3d 724, 730, 733 (M.D. Tenn. 2018). The Plaintiff has also cited cases which make it clear that the "discovery rule" determines when Title

IX claims and Section 1983 claims accrue. Anderson v. Bd. of Educ. of Fayette Cty., 616 F. Supp. 2d 662, 668 (E.D. Ky. 2009).

Rudd and Anderson here offer the same theory as Defendant, University of Memphis; that the cause of action accrued at some date prior to August 5, 2018, despite there never being a final adjudication of the administrative action against Ernest Suttles. They raise the same arguments by again, trying to separate the Plaintiff's claims into separate causes of action for separate acts. In fact , there was one objective and one purposeful act: the denial of a hearing. These Defendants, Rudd and Anderson, used several devices along the way to achieve that aim.

Rudd and Anderson's motions to dismiss argue that a cause of action under Title IX accrues at some other date, other than the date of final adjudication. They argue ( without legal support ) that the cause of action accrued on the date of the dismissal from the football team (October 14, 2017), when the interim sanctions were imposed (October 17, 2017) or when the 60 day period for investigating complaints expired (December 15, 2017).

However, as the Plaintiff has succinctly noted in other briefs, the Plaintiff's claim in this lawsuit is clearly an "erroneous outcome" claim as stated in Paragraph 44 of the Complaint:

> 44. The outcome of the Title IX process of the plaintiff was erroneous. The Plaintiff specifically avers that due to the failure of Kenneth Anderson, David Rudd and the University of Memphis to complete his investigation in good faith, there never was a hearing of the accusations leveled against him, which raises clear and articulable doubts the outcome of any part of the disciplinary proceeding against Ernest Suttles. Ernest Suttles was never given the opportunity to cross examine Jane Roe or test her version of events in any process resembling a hearing. He specifically avers that as the credibility of the accuser and her accusations was at stake, at a minimum the Defendants should have allowed him to cross examine his accuser and test the credibility. This did not occur. Due to the actions of Kenneth P. Anderson and the University of Memphis, a doubt therefore exists as to the outcome for this basic procedural error alone. In addition, the failure to investigate this claim, by specifically ignoring witnesses available to the incident in question, i.e. Ernest Suttles' witness, is a sufficient articulable doubt as to the basic fairness of the process to violate the requirements of Title IX.

As this is explicitly an "erroneous outcome" case, it is likewise undisputed that the date of accrual of such a claim is the date of final adjudication. This is because this issue was decided in the case of Roberson v. Tennessee, 399 F.3d 792 (6th Cir. 2005) **and no amount of arguing can change this ruling.**

In Roberson, the 6th Circuit noted that a claim accrues on the date when the plaintiff knew, or through reasonable diligence should have known, of an injury giving rise to his cause of action. Collard v. Kentucky Bd. Of Nursing, 896 F.2d 179, 184 (6th Cir. 1990). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 273 (citations omitted). Courts have taken a common-sense approach to this task, inquiring as "to what event should have alerted the typical lay person to protect his or her rights." *Hughes,* 215 F.3d at 548 (quoting *Dixon v. Anderson,* 928 F.2d 212, 215 (6th Cir.1991)). Roberson v. Tennessee 399 F.3d 792 (6th Cir. 2005) provides clear guidance on exactly what would put a lay person on notice to protect his or her rights: a final adjudication:

> "…The district court was correct in concluding that the typical lay person would have been alerted as to the need to protect his rights before May 22, 2002. While Roberson argues that the Student Promotions Committee had no authority to issue a final decision on his case, and therefore that he had not "exhausted his administrative remedies" until Dr. Stanton issued his letter, it is clear that a typical lay person would have recognized the need to take legal action considerably earlier in the process.
>
> **Specifically, the district court determined the "summer of 2001" to be the latest date on which the limitations period could begin. It reasoned that the decisions of the Student Promotions Committee amounted to a final and formal dismissal from school, and that Roberson's efforts to informally petition various officials about reinstatement demonstrate an awareness that any alleged infringement of his rights had already occurred**.

In response, Roberson seeks to downplay the involvement and authority of the Promotions Committee, arguing at length that the Committee can only "recommend" dismissal, and not order it. Roberson contends that Dr. Franks's letter of April 18, 2002, operated as an official acceptance of the Committee's "recommendation," and that Roberson was not put on notice of the need to protect his rights until Dr. Stanton "upheld" this acceptance. In support of these claims, Roberson cites several passages from the ETSU handbook in which the words "recommend" or "recommendation" are used in reference to the functioning of the Promotions Committee.

Roberson's argument is misplaced. It was not necessary, as he argues, for a decision of the school administration to "conver[t] a mere dismissal recommendation into a concrete expulsion" for Roberson to be aware of the need to protect his rights. Roberson acknowledges that his leave of absence was involuntary, and alleges that he was denied his right to appeal the decision placing him on leave. Whether this decision was made by the Promotions Committee (of right or by usurpation) or by a school official adopting the Committee's "recommendation" is of no import[1]. The fact remains that Roberson was aware of any alleged denial of his rights by the summer of 2001.

While Roberson was undoubtedly wise to utilize the appellate process provided to him following the denial of his plea for *reinstatement* in 2002**, it is clear that his allegations under § 1983 must include a discrete deprivation of rights finalized before this second process even began.** As the Supreme Court explained in a similar (educational) setting, "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)(emphasis in original). *Cf. Morse v. Univ. of Vermont,* 973 F.2d 122, 125 (2nd Cir.1992)("The fact that UVM allowed appellant to continue to take courses and undertook an internal administrative review of its allegedly discriminatory decision has no effect on when the statute of limitations period begins to run."); *Kessler v. Bd. of Regents,* 738 F.2d 751, 754 (6th Cir.1984)(similar result in termination from employment context).

The district court did not err in selecting "the summer of 2001" as the date for the relevant decision. It is clear from the record[2], as well as from Roberson's own statements, that he was dismissed from the ETSU medical program in February of 2001, and that the Student Promotions Committee denied him admission in August of 2001. Nor did the court err in construing Roberson's efforts following the execution of that decision (including "informal" petitions for reinstatement, as well as the letters to Dr. Franks and Dr. Stanton) as efforts at achieving a *post hoc* remedy.

A reasonable lay person would have acted to protect his rights following the August decision, at the very latest. Because Roberson did not file his complaint until May 22, 2003, the district court correctly dismissed the action as untimely.

Roberson v. Tennessee, 399 F.3d 792 (6th Cir. 2005)**(emphasis added**). This case is an unwavering and simple statement as to the issue of the accrual of a Title IX cause of action: it is and must be the date when Ernest Suttles had been subject to a final adjudication. And as the Plaintiff has noted in this lawsuit, that never occurred. Kenneth Anderson promised for over twenty months that a final adjudication would occur and that the Plaintiff would have a right to appeal. This never happened. At no time was Ernest Suttles ever charged with a specific violation of any Student Code of Conduct and no initial determination of a charge or decision was ever rendered. No expulsion from school occurred. He was simply given a sanction they called "interim" and then promised the final adjudication under Roberson. Therefore, without that date of adjudication, there can be no claim at this juncture that the cause of action has accrued. The motion to dismiss should be denied.

4. Equitable tolling, not the Continuing Violations Doctrine, Should Toll the Running of the Statute of Limitations.

Equitable estoppel should also bar the statute of limitations argument of the Defendant. Tennessee courts have held that successful assertion of the doctrine of equitable estoppel or equitable tolling requires that the plaintiff show that (1) the defendant knew or should have known that its conduct would induce the Plaintiff to delay filing suit, (2) the plaintiff's reliance on this conduct was reasonable, and (3) the plaintiff's delay was not unreasonable or due to lack of diligence. Northeast Knox Utility District v. Stanfort Const. Co., 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006) (citing Hardcastle v. Harris, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)). Where equitable estoppel has been raised, a court must determine whether the defendant engaged in conduct specifically designed to prevent plaintiff from suing in time. Fahner v. SW Manufacturing, Inc., 48 S.W.3d 141, 145 (Tenn. 2001).

Defendants Rudd and Anderson claim that the five factor test cited in *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) is applicable to the issue of equitable tolling ho0wever, this is incorrect. This is a Michigan case, citing a state court ruling on equitable tolling. However, when a federal cause of action borrows a state statute of limitations, "coordinate tolling rules" are usually borrowed as well. Hardin v. Straub, 490 U.S. 536, 539 (1989) (quoting Bd. of Regents of the Univ. of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980)). We have accordingly recognized that state equitable tolling principles control in § 1983 cases. Rotella v. Pederson, 144 F.3d 892, 897 (5th Cir. 1998). This includes tolling based on fraudulent concealment and the "discovery rule." See id. at 896–97.

In Tennessee the test for equitable tolling or equitable estoppel is whether (1) the defendant knew or should have known that its conduct would induce the Plaintiff to delay filing suit, (2) the plaintiff's reliance on this conduct was reasonable, and (3) the plaintiff's delay was not unreasonable or due to lack of diligence. Northeast Knox Utility District v. Stanfort Const. Co., 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006) (citing Hardcastle v. Harris, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)). Where equitable estoppel has been raised, a court must additionally determine whether the defendant engaged in conduct specifically designed to prevent plaintiff from suing in time. Fahner v. SW Manufacturing, Inc., 48 S.W.3d 141, 145 (Tenn. 2001). As the Plaintiff has alleged equitable tolling not equitable estoppel, this additional requirement does not apply.

The first element of equitable tolling has been properly pled in the Amended Complaint because it alleges that the January 2018 Email From Kenneth Anderson Was Designed to Deceive the Plaintiff. This is important because other courts have noted as follows:

> "…Having held that the discovery rule and equitable estoppel are different, we must now decide how long the statute of limitations is tolled when a plaintiff successfully invokes the latter. The answer is clear: the tolling period equals the amount of time the defendant misled the plaintiff. See Lusk, 655 S.W.2d at 920-921. Equitable estoppel is premised on the defendant's wrongdoing, and, consequently, the

> plaintiff must be given the time during which the defendant misled the plaintiff so that plaintiff's entitlement to the full statutory time period is preserved. This is similar to the result in discovery rule cases, where the defendant's fraudulent concealment prevents the plaintiff from discovering his cause of action. See Vance, 547 S.W.2d at 930 ("[The statute] begins to run as of the time of the discovery of the fraud by the plaintiff."). Any other result would reward the defendant for his deception. As discussed above, Fahrner claims that he missed the time deadline because S.W. Manufacturing misled him until May 1998. If true — as will be determined on remand — Fahrner would be entitled to a full year from that time, assuming he is entitled to equitable estoppel relief. Since Fahrner filed suit in December 1998, he will have met the deadline."

Fahner v. SW Manufacturing, Inc., 48 S.W.3d 141, 145 (Tenn. 2001). The question that Fahner presents is not whether the Defendants agree the claim should be equitably tolled: it is whether the Plaintiffs have alleged a prima face case that it should be based upon Tennessee law. In the complaint, the Plaintiff clearly alleges that "… The Plaintiff was induced to delay filing suit in this case due to the specific actions of the Defendants, Kenneth P. Anderson and the University of Memphis…" R. 12, Pg. Id.76-77. "…However, after promising him this resolution of the initial complaint from an investigator and the opportunity for an appeal hearing the University of Memphis then proceeded to lull Suttles into believing that a decision was forthcoming when it did not intend to complete the investigation…"

Finally, the Complaint alleges that:

> 76. The University of Memphis and Kenneth Anderson followed this initial October 14, 2017 "Interim Measures" letter with an email to the Plaintiff and to his teachers, again promising an investigation and concealing their true intentions. On January 22, 2018, Kenneth Anderson advised that he was still working on his report and that there would be a right to a hearing in an appeal if one was taken once he was completed. At this point there had been no action other than the interim measures which were still in place. Plaintiff Suttles was therefore without the right to an appeal which would have triggered the right to a hearing, and the ability to cross examine the accuser. 77. What the Defendants did not reveal is that they did not investigate and never would. They never retracted their promise to investigate and issue a ruling which would have allowed the Plaintiff to clear his name administratively. Because no final decision was ever reached the interim measures became permanent at the moment the Plaintiff graduated. The Plaintiff relied upon the promises of Kenneth P. Anderson, the University of Memphis and Dr. M. David

> Rudd to investigate the claims of Jane Roe, to issue a ruling on the claim by Jane Roe, and allow him a hearing in an appeal. He relied upon these promises by not filing suit against these Defendants based upon their promises of due process in letters and emails to him. As they have never retracted these false statements their attempt to mislead the Plaintiff continued up to the date of the filing of this lawsuit.

This paragraph in the Amended Complaint clearly demonstrates that the Plaintiff explicitly alleges reliance and lack of diligence. He alleges that he COULD not have asked for an appeal because he was never charged with a violation of the student code of conduct. His complaint alleges that there was an email from the Defendant, Kenneth Anderson which induced him into believing that he would get a hearing. This is an appropriate example of pleading justifiable or reasonable reliance.

Plaintiff would also point out that any discussion of whether the Plaintiff relying for any amount of time was "reasonable" is the province for the trier of fact, not a determination to be made on a 12(b)(6) motion. Our rules in Tennessee require this issue to be resolved by the trier of fact; the only question at this stage is whether these elements have been pled properly:

> Justifiable reliance is an essential element of a claim for fraudulent misrepresentation or fraudulent concealment. See McNeil v. Nofal, 185 S.W.3d 402, 408 (Tenn. Ct. App. -5- 2005). Whether the plaintiff's reliance on a representation was reasonable is a question of fact. City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996); see generally Smith v. Sloan, 225 S.W.2d 539, 541 (Tenn. 1949) (determination of reasonable conduct as question of fact). There are a number of factors relevant to the determination of whether a plaintiff's reliance was reasonable: (1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation. Pitz v. Woodruff, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *10 (Tenn. Ct. App. Dec. 17, 2004); see also Allied Sound, Inc. v. Neely, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001).

However, if we in fact step outside of the constraints of a 12(b)(6) motion, it is clear that the Plaintiff has adequately pled this claim. A consideration of any of these factors leads one to

the conclusion that Suttles' reliance was unreasonable: 1) the Plaintiff was a 22 year old college student with no work experience, and a member of the football team. Defendant Rudd was the President of the University and Defendant Anderson was the Director of the Office of Institutional Equity. These Defendants obviously sat in a position of power and held a sophistication imbalance in their favor in this situation. The relationships between the parties through the University was one which fostered a fiduciary relationship between the football players and the University of Memphis. The information Ernest Suttles needed to know ( i.e., that these defendants were lying to him about doing the investigation) was absolutely unknown to him and certainly unknowable. There was in fact concealment, because the January 2018 email was a clear attempt to conceal from Ernest Suttles that an investigation existed when in fact there was none. This is explicitly pled in the complaint. As these misrepresentations were specific and initiated by the Defendants, specifically Anderson, the Plaintiff has properly pled the claim of equitable estoppel. The Motion to Dismiss on this basis should be denied.

In essence, the University of Memphis argument can be summarized as "Yes we lied to Ernest Suttles, but he never should have believed us and should have caught on sooner". While any of us can debate the wisdom of that strategy in this case, the Plaintiff avers that it is not a particularly persuasive argument, given the relationship of the parties, Suttles' age and his lack of experience. The Plaintiff acted as reasonable as a 21 or 22 year old student would and the motion to dismiss filed by the Defendants Rudd and Anderson should therefore be denied.

RESPECTFULLY SUBMITTED,

JOHNSON & JOHNSON, P.L.L.C.

A Professional Limited Liability Company

__/s/Curtis D. Johnson, Jr. ____________

CURTIS D. JOHNSON, JR. ( Bar No.015518)
Suite 1002, 1407 Union Avenue
Memphis, Tennessee 38104
Telephone: (901) 725-7520
Facsimile: (901) 725-7570
cjohnson@johnsonandjohnsonattys.com

_/s/Florence J. Johnson__________
FLORENCE M. JOHNSON
Suite 1002, 1407 Union Avenue
Memphis, Tennessee 38104
Telephone: (901)725-7520
Facsimile: (901)725-7570
fjohnson@johnsonandjohnsonattys.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 20th day of January, 2020, served all parties in this matter with the foregoing pleading by CM/MECF and by sending a copy of the foregoing via U.S. mail, First Class postage prepaid to the following:

Taylor W. Jenkins
Assistant Attorney General
Education and Employment Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-6739
taylor.jenkins@ag.tn.gov

David M. Rudolph
Assistant Attorney General
One Commerce Square
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-4162
david.rudolph@ag.tn.gov

Jim Newsom, BPR #6683
Special Counsel
One Commerce Square
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473

jim.newsom@ag.tn.gov

/s/*Curtis D. Johnson, Jr.*_______
CURTIS D. JOHNSON, JR.