**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **ERNEST SUTTLES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19-cv-02502-JTF-cgc** |
| | ) | |
| **UNIVERSITY OF MEMPHIS,** | ) | |
| **KENNETH P. ANDERSON, in his** | ) | |
| **individual capacity, and DR. DAVID** | ) | |
| **RUDD, in his individual capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING DEFENDANTS' NEWLY FILED MOTIONS TO DISMISS AND
DENYING AS MOOT DEFENDANTS' ORIGINALLY FILED MOTIONS TO DISMISS**

Plaintiff Ernest Suttles initially filed suit against Defendants University of Memphis ("University"), Kenneth P. Anderson ("Anderson") in his individual capacity, and Dr. David Rudd ("Dr. Rudd") in his individual capacity (collectively "Defendants") on August 5, 2019. (ECF No. 1.) Shortly thereafter, the University moved to dismiss the original complaint. (ECF No. 9.) Plaintiff then filed an Amended Complaint ("complaint") alleging violations of Title IX of the Education Amendments Act of 1972 ("Title IX"), the denial of his Fourteenth Amendment due process rights under 42 U.S.C. § 1983 ("Section 1983"), and breach of contract. (ECF No. 12:34-72.) The Defendants each filed motions to dismiss the complaint, which are now before the Court. The University's Motion to Dismiss First Amended Complaint under Fed. R. Civ. P. 12(b)(1) was filed on October 25, 2019. (ECF No. 17.) Also, Defendants Anderson and Dr. Rudd separately filed motions to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on December

1

2, 2019.  (ECF Nos. 29 & 30.)  Plaintiff filed responses in opposition to these pleadings (ECF Nos. 28 & 39) and the Defendants filed corresponding replies (ECF Nos. 33, 40, & 41).

For the following reasons, the Defendants' originally filed motions to dismiss should be DENIED as moot, their subsequently filed motions to dismiss should be GRANTED, and Plaintiff's Amended Complaint DISMISSED with prejudice.

## FACTUAL BACKGROUND

Plaintiff was recruited to play NCAA Division I football at the University of Memphis. (ECF No. 12:8.)  The University awarded Plaintiff a scholarship in exchange for his participation on the school's football team.  (*Id.*)  The scholarship agreement, which Plaintiff and the University's Director of Athletics signed prior to the 2017-2018 academic year, was subject to NCAA regulations and the University's own rules governing financial aid to student-athletes.  (*Id.*)  According to his Amended Complaint,[1] Plaintiff was arrested and charged with rape on or about October 15, 2017, mid-way through his final season playing college football.  (*Id.*)  On the date of his arrest, the University dismissed Plaintiff from the football team and published the following statement in part:

> Ernest Suttles has been dismissed from the University of Memphis football team for a violation of team rules in an off[-]campus incident.  As was communicated in an earlier statement, S[u]ttles has been removed from campus while this matter is reviewed by the Office of Student Accountability, Outreach and Support for violations of the UofM Student Code of Conduct.  During the ongoing investigation, no additional comments will be made.

---

[1] Up to this point in litigation, Plaintiff has not included any exhibits to support his claims, but the Defendants do not contest Plaintiff's factual assertions.  Despite the lack of exhibits, the Court will review the allegations in the light most favorable to Plaintiff and, for example, accept Plaintiff's recitation of the evidence as true.  *Henderson v. Sw. Tennessee Cmty. Coll.*, 282 F. Supp. 2d 804, 806 (W.D. Tenn. 2003).  *See also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.").

On October 16, 2017, before Plaintiff posted bond on the criminal complaint, the University's Director of Institutional Equity, Defendant Anderson, issued a Notice of Complaint against Plaintiff.  (*Id*. ¶ 14.)  The Notice advised Plaintiff that the University had begun disciplinary proceedings against him for violating the Student Code of Conduct and that he would be subject to certain interim sanctions during pendency of the University's investigation into his alleged conduct. (*Id*. ¶¶ 15, 17.)  In addition to his removal from the football program, Plaintiff was barred from attending classes in person, taking exams in person, or being physically present on the University's campus. (*Id*. ¶¶ 16, 25.)  The University also terminated Plaintiff's financial aid. (*Id*.)

According to school policy, once an investigation into a student's conduct has begun, the University is required to make "[e]very reasonable effort . . . to conclude the investigation and resolve the complaint within sixty (60) calendar days following receipt of the complaint."  (*Id*. ¶ 22.)  The policy goes on to explain that the sixty-day timeframe is a "guideline[] rather than a rigid requirement[]." (*Id*.)

Plaintiff abided by the University's sanctions throughout the fall of 2017 and cooperated with the University's investigation.  (*Id*. ¶ 17.)   According to Plaintiff, he notified the University investigators that his roommate was present at the time of the alleged offense and could provide exculpatory information, but the roommate was never interviewed.  (*Id*.)  At some point, Defendant Anderson and another University employee met with and interviewed Plaintiff, but no decision was rendered by the University within sixty days of the Notice of Complaint.  (*Id*. ¶ 25.)  On January 22, 2018, Defendant Anderson, who was leading the University's investigation, e-mailed Plaintiff the following message:

Earnest [sic]:

I still anticipate completing my report by the end of next week, but I wanted to alert

you to the fact that it is not the end of the process necessarily.  Both parties will
have a right to appeal my findings and that would extend the process and interim
measures that are currently in place.  Also, if a policy violation was established by
the investigation (hypothetically mentioned here only for clarity sake), then the
Office of Student Conduct, Outreach and Accountability would determine any
sanctions and both parties would also have the right to appeal their decision.  I
explain all of that to say that the completion of the process could last an additional
month if either party utilizes their appeal rights.  Thus, I wanted to provide this
information so you could make a fully informed decision regarding your academic
options.

Sincerely,

Kenneth P. Anderson
Director | Title IX Coordinator
Office for Institutional Equity

(*Id*. ¶ 18.)  The University never concluded its investigation of the complaint, nor rendered a final

decision in Plaintiff's case, and the imposed sanctions against Plaintiff remained intact until he

graduated on August 11, 2018.  (*Id*. ¶ 25); (ECF No. 13, 12 n.1).  Plaintiff filed this lawsuit on

August 5, 2019 against the University, Kenneth Anderson, and the University's President, Dr.

David Rudd.  (ECF No. 1.)

## **LEGAL STANDARD**

The Defendants challenge Plaintiff's claims under Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure.  A complaint may be dismissed under Rule 12(b)(1) for lack of subject

matter jurisdiction.  When a complaint is challenged under this Rule, courts must construe it in the

light most favorable to the plaintiff.  *Henderson v. Sw. Tennessee Cmty. Coll.*, 282 F. Supp. 2d

804, 806 (W.D. Tenn. 2003).  Because there exists a presumption against federal jurisdiction, the

burden of establishing jurisdiction rests upon the party asserting it.  *Kokkonen v. Guardian Life*

*Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  The court may review extra-

complaint evidence and resolve factual disputes in its consideration of a 12(b)(1) motion to

dismiss. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986)   If it is determined that subject matter jurisdiction is lacking, the court is obligated to dismiss the case.   Fed. R. Civ. P. 12(h)(3).

Likewise, a complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.   "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."   *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson Cnty., Tenn.*, 8l4 F.2d 277, 279 (6th Cir. 1987)).   When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   In other words, although the complaint need not contain detailed facts, its "[f]actual allegations must be enough to raise a right to relief above a speculative level."   *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).   Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense. [2]   *Iqbal*, 556 U.S. at 129.

---

[2] The Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint," however, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (alterations in original) (*quoting Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)).

## ANALYSIS

### 1. Administrative Issues

There are two administrative issues that must be addressed before the Court can begin its analysis.  Namely, the Court must identify which of the Defendants' motions to dismiss are operative, and which of Plaintiff's claims remain active.

### a. *Identifying the Operative Motions to Dismiss*

Since the beginning of this case in August of 2019, the Defendants have filed a total of six motions to dismiss (ECF Nos. 9, 17, 24, 25, 29, & 30) in response to Plaintiff's original and amended complaints (ECF Nos. 1 & 12).  Plaintiff's amended complaint provides a full restatement of the alleged facts and claims being brought against the Defendants, without reference to the original complaint.  The Court finds that the University's motion to dismiss the original complaint (ECF No. 9) should be denied as **MOOT** because the complaint was amended, and the University filed a separate motion to dismiss in response.

Additionally, Defendants Anderson and Dr. Rudd originally filed their motions to dismiss on November 27, 2019 (ECF Nos. 24 & 25) but refiled them on December 2, 2019 after receiving deficiency notices by the Clerk of this Court (ECF No. 27).  Because the motions were refiled, the Court finds that the original motions (ECF Nos. 24 & 25) should be denied as **MOOT** and therefore considers Anderson and Dr. Rudd's refiled motions (ECF Nos. 29 & 30) as operative pleadings in this case.  In summary, a careful review of the record reveals that the operative pleadings before the Court are Plaintiff's First Amended Complaint (ECF No. 12), the University's Motion to Dismiss the First Amended Complaint (ECF No. 17), Anderson's second-filed motion to dismiss (ECF No. 29), and Dr. Rudd's second-filed motion to dismiss (ECF No. 30).

### b.  Identifying Plaintiff's Active Claims

The Amended Complaint asserts three claims against the Defendants.  (ECF No. 12:34-77.)   For clarity, the Court notes at the outset, that Plaintiff names each Defendant and substantively alleges their liability under each of the three claims.  (*Id*.)  Throughout his responses to the motions to dismiss however, Plaintiff essentially retracts one or two allegations against each Defendant.  (ECF Nos. 28, 1-2 & 39, 6.)  To the extend Plaintiff does so, the Court finds the Defendants' underlying motions to dismiss those claims as moot because Plaintiff has withdrawn the allegations.  The Court will discuss each in turn.

First, Plaintiff alleges that the Defendants violated Title IX by imposing sanctions against him without providing "the benefit of a hearing or an opportunity to defend himself against the charges" and by "fail[ing] to conduct an adequate, reliable, and impartial investigation" of the complaint against him.  (ECF No. 12:34-52.)   As a result, Plaintiff argues that he is entitled to damages and injunctive relief. (*Id.* ¶ 52 & *Prayer for Relief* ¶ 1.)  Following the Defendants motions to dismiss, Plaintiff clarified that his Title IX claim had only been brought against the University, not against Defendants Anderson and Dr. Rudd.  (ECF No. 39, 6.)  Therefore, the Court finds that Anderson and Dr. Rudd's motions to dismiss Count I of the complaint are **MOOT**.

Second, Plaintiff brings a Section 1983 claim against the Defendants for depriving him of his protected property and liberty interests without due process in violation of the Fourteenth Amendment.  (ECF No. 12:52-65.)   Plaintiff is seeking damages and injunctive relief because of his treatment.  (*Id.* ¶ 65 & *Prayer for Relief* ¶ 2.)  Third and finally, Plaintiff alleges breach of contract and seeks money damages against the Defendants[3] for rescinding his athletic scholarship,

---

[3] Although the heading of Count III of the complaint is styled "Breach of Contract Against Kenneth P. Anderson and David Rudd," and thus, appears to exclude the University, Plaintiff's allegation describes the University's involvement and therefore, was reasonably construed by the University as a breach of contract claim against it.  *See e.g.* (ECF No. 12:68-69) ("University of Memphis makes express contractual commitments to students involved in a disciplinary

7

subjecting him to interim sanctions, and denying him due process.  (*Id.* ¶¶ 66-72 & *Prayer for Relief* ¶ 3.)  In response to the University's motion to dismiss, Plaintiff clarified that his Section 1983 and breach of contract claims were only alleged against Defendants Anderson and Dr. Rudd, not against the University.  (ECF No. 28, 1.)  The Court finds that the University's motions to dismiss Counts II and III of the complaint are **MOOT**.  Therefore, what remains are Plaintiff's Title IX claim against the University and his Section 1983 and breach of contract claims against Anderson and Dr. Rudd.

### 2. Subject Matter Jurisdiction Over Plaintiff's Title IX and Section 1983 Claims

The University argues that Plaintiff's Title IX claim was untimely and therefore, should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  (ECF No. 18.)  Defendants Anderson and Dr. Rudd raise the same argument against Plaintiff's Section 1983 claim.  (ECF Nos. 29 & 30.)  In addition to their primary argument that the complaint is barred by a one-year statute of limitations, all three Defendants contend that equitable tolling does not apply to Plaintiff's claims.

#### a. Statute of Limitations

The Parties agree that Title IX and Section 1983 claims are subject to a one-year statute of limitations in Tennessee.  (ECF Nos. 18, 5 & 39, 7.)  *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996); *Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016) (applying a one-year statute of limitations to Title IX and Section 1983 claims, respectively, based on Tennessee's personal injury statute Tenn. Code Ann. § 28-3-104).  The Parties also agree that this statute of limitations "commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action" and "[the] plaintiff has reason to know of his injury when

---

process, as well as in this case, student athletes with financial aid agreements."); ("University of Memphis and Dr. M. David Rudd created express and implied contracts with Plaintiff . . . .").

he should have discovered it through the exercise of reasonable diligence." *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); (ECF Nos. 18, 5 & 39, 7-8.)  Courts identify this accrual date by asking "what event should have alerted the typical lay person to protect his or her rights." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016) (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)).

Here, although the Parties agree that a one-year statute of limitations applies to Plaintiff's federal claims, they disagree when that limitations period began to run.  Based on Plaintiff's filing date of August 5, 2019, the complaint was timely if it accrued on or after August 5, 2018. *Roberson*, 399 F.3d at 794 (holding that the date on which the limitations period begins to run is not counted when computing the length of time elapsed, e.g., May 22, 2002 was accurately identified as the accrual date for the complaint filed on May 22, 2003).  The Defendants argue that Plaintiff's claim accrued before August 5, 2018 and is now time-barred by the one-year statute of limitations.  (ECF Nos. 18, 5-8; 29-1, 5-8; & 30-1, 5-8.)  Specifically, they advocate that Plaintiff's claim accrued on one of the following three days: 1) October 17, 2017, the day the interim measures were imposed on Plaintiff; 2) December 15, 2017, sixty days after the University's investigation commenced but had not been completed as required by University policy; or 3) January 22, 2018, the day Anderson notified Plaintiff by e-mail that the investigation was still ongoing and Plaintiff would not receive a hearing unless he requested one on appeal.  (ECF Nos. 18, 6-8; 29-1, 6-8; & 30-1, 6-8.)  Plaintiff asserts that none of these proposed accrual dates are accurate because he raised an "erroneous outcome" claim, which according to Plaintiff, does not accrue until the date of final adjudication.  (ECF Nos. 28, 3 & 39, 8-9.)  Because no final adjudication of the investigation into his alleged conduct occurred, Plaintiff contends "there can

be no claim at this juncture that the cause of action has accrued."  (ECF Nos. 28, 5 & 39, 11.) Plaintiff bases this argument exclusively on the Sixth Circuit's decision in *Roberson v. Tennessee*.

In *Roberson*, a university student was accused of violating the honor code by cheating.  399 F.3d at 793.  Mr. Roberson claimed that in January 2001 the Student Promotions Committee found him guilty of cheating, placed him on a leave of absence, and recommended disciplinary action to the university's honor council without investigating the allegation or allowing Roberson the opportunity to defend himself.  *Id*.  The council concurred with the finding of guilt but concluded that further disciplinary action would not be necessary.  *Id*.  However, the leave of absence against Roberson was not lifted, and he spent the spring and summer of 2001 petitioning for readmission. *Id*.  In August of 2001, Roberson again met with the Promotions Committee, which denied his readmission request.  *Id*., at 794. Roberson was permitted to attend classes during the Spring semester of 2002 but was deemed "unsuitable to enroll" at a February 2002 Promotions Committee meeting, and he ultimately received letters from the Dean and university President in April and May of 2002 denying his request for readmission.  *Id*.

The Sixth Circuit affirmed the district court's dismissal of Roberson's May 2003 complaint on the basis that it was filed in violation of the one-year statute of limitations.  *Id*., at 796.  Roberson argued that he was not aware of the need to protect his rights until May of 2002 when he received the final letter from the university President denying his request for readmission. *Id*. at 795.  The Court called Roberson's argument "misplaced," holding: "It was not necessary, as [Roberson] argues, for a decision of the school administration to 'conver[t] a mere dismissal recommendation into a concrete expulsion' for Roberson to be aware of the need to protect his rights."  *Id*., at 795.  Rather, based on Roberson's own allegation that his leave of absence was involuntary and that he was wrongfully denied an appeal by the university, the Court determined

that "[a] reasonable layperson would have acted to protect his rights following the August decision, at the very latest." *Id*. Roberson's argument that the sanctions were unlawfully imposed, had no effect on the Court's assessment that "[he] was aware of any alleged denial of his rights by the summer of 2001." *Id*.

Here, without much explanation, Plaintiff argues that *Roberson* provides "an unwavering and simple statement" that Title IX, and by extension, Section 1983 causes of action, do not accrue until final adjudication. (ECF Nos. 28, 5 & 39, 11.) To support this conclusion, Plaintiff offers a long quotation from *Roberson* and highlights language affirming the district court's rationale that Roberson's claim accrued in the summer of 2001 because the Promotions Committee denied his request for readmission at that time, which the Court held "amounted to a final and formal dismissal from the school." (ECF No. 39, 9) (quoting *Roberson*, 399 F.3d at 795). Although the Sixth Circuit affirmed this reasoning, it did not hold, contrary to Plaintiff's argument, that a formal dismissal or final adjudication by the school was required before Roberson's claim accrued. In fact, *Roberson* is an example of a claim that *did* accrue before final adjudication. Roberson did not receive final adjudication from the university until May of 2002 when the school's President wrote him a final letter denying his request for readmission. *Roberson*, 399 F.3d at 795. Nonetheless, the Court determined that Roberson became aware of his alleged rights violations much earlier, when his initial request for readmission was denied in August 2001—an event the district court reasoned "amounted to a final and formal dismissal from the school" but was not actually a final adjudication. *Id*.

Plaintiff alleges that he was subjected to interim sanctions and denied due process by the Defendants, but insists that his claim never accrued because he was not charged with a specific violation of the Student Code of Conduct, he was never formally expelled from the University,

11

and there was no final adjudication of the complaint against him, despite the Defendants'
assurances "for over twenty months that a final adjudication would occur and that Plaintiff would
have a right to appeal." (ECF Nos. 28, 5 & 39, 11.)  By definition, Plaintiff's argument that his
claim never accrued is an assertion that he never became aware of the need to protect his rights,
even up to the time of filing his lawsuit in August of 2019.  The Court cannot accept this line of
reasoning.

Plaintiff emphasizes that the complaint focuses on the "erroneous outcome" caused by the
bad faith investigation and his being denied a hearing, [4] which violated his rights under Title IX
and Section 1983.  (ECF Nos. 28, 2-3 & 39, 8-9.)  Whether Plaintiff became aware of this denial
of rights in October of 2017 when the sanctions were imposed without a hearing, or in December
of 2017 when the University's investigation exceeded the prescribed timeline, does not matter.
The Court need not consider these options with precision because one thing is certain: Plaintiff
had reason to know of his alleged injury, at the very latest, by January 22, 2018 when he received
Anderson's e-mail informing him that a hearing was not forthcoming.  In Plaintiff's own words:

> This email made it clear to the Plaintiff that there would be no hearing until an
> appeal, beyond the initial interview conducted by Mr. Anderson and that he would
> have to be subjected to the interim sanctions while an appeal was filed, again,
> before a final adjudication of this complaint.

 (ECF No. 12:19.)  By his own admission Plaintiff was aware of the interim sanctions imposed on
him without a hearing, he recognized the protracted nature of the University's investigation, which
he believed was being done in bad faith for over three months, and by January 22, 2018, Plaintiff
became aware that there would be no hearing before appeal.  Receiving this e-mail from the
University's lead investigator would have alerted the typical lay person of the need to protect his

---

[4] In his response to Anderson and Dr. Rudd's motions to dismiss, Plaintiff contends that "the denial of a hearing" was
the "one objective and one purposeful act" underlying the Defendants' conduct.  (ECF No. 39, 8.)

rights. *Am. Premier Underwriters, Inc.,* 839 F.3d at 461. At the very latest, Plaintiff's claim accrued on January 22, 2018, almost nineteen months before he filed suit on August 5, 2019. Plaintiff's Title IX and Section 1983 claims therefore, violated the 1-year statute of limitations and should be dismissed.

Moreover, even if Plaintiff had argued, and to the extent Defendants suggest he did, that Plaintiff's claim accrued on or near August 11, 2018, the day he graduated from the University, the outcome would remain the same. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) ("If an allegation is capable of several inferences, the allegation must be construed in a light most favorable for the plaintiff."). In *Roberson*, the Court held that "a concrete expulsion" was not necessary for the plaintiff to be aware of the need to protect his rights. *Roberson*, 399 F.3d at 795. Likewise, Plaintiff did not need to graduate from the University before he had reason to know of his injury. The fact remains that Plaintiff was aware of the alleged denial of his rights by January 22, 2018 and his proximity to graduation had no effect on that awareness.

### b. *Tolling the Statute of Limitations*

Plaintiff raises an alternative argument that the statute of limitations for his Title IX and Section 1983 claims should be tolled, allowing his untimely complaint to survive the Defendants' Rule 12(b)(1) motions. (ECF Nos. 28, 5-7 & 39, 11.) The Parties agree that when federal courts borrow state statutes of limitations, the tolling rules of that state apply. *See e.g.* (ECF Nos. 39 & 40) (citing *Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 2001 (1989)). Plaintiff casts a wide net to support his tolling argument by asserting overlapping and, at times, contradicting legal theories of equitable estoppel, equitable tolling, and fraudulent concealment. For example, Plaintiff argues that the doctrine of equitable estoppel should toll his Title IX claim against the University, but states that "equitable tolling" clearly resolves any timeliness issue, and then asserts

that he is entitled to tolling because of the Defendants' dishonest conduct. (ECF No. 28, 5-7.) Later, in his response to Anderson and Dr. Rudd's motions to dismiss, Plaintiff concedes that he "has alleged equitable tolling not equitable estoppel." (ECF 39, 12.) Although the Court does not find these theories persuasive, each will be addressed in turn.

### i.   Equitable Estoppel

When applied to a statute of limitations context, the doctrine of equitable estoppel tolls the limitations period where a plaintiff has been misled by the defendant into filing his suit late. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). Successfully invoking equitable estoppel requires the plaintiff to "demonstrate that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit." *Id.* Actual fraud, bad faith, or an intent to mislead is not necessary on the part of the defendant for the doctrine to be invoked. *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004). In addition, plaintiff must demonstrate that his delay in filing suit was not unreasonably prolonged or attributable to his lack of diligence. *Id.* (citing *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997)). Thus, plaintiff has both the burden of proof and the burden of demonstrating his exercise of diligence. *Redwing*, 363 S.W.3d at 460.

Here, Plaintiff seeks to justify his delay in filing suit on the Defendants undertaking "explicit and clear activities to induce [Plaintiff] into believing that he would get a hearing and the opportunity to resolve the claims against him and have the interim sanctions dropped." (ECF No. 28, 6.) Plaintiff claims that Anderson's October 14, 2017 letter provided false assurance that the interim restrictions were imposed "pending the completion of [Defendants'] investigation," which

14

never came.[5]  (*Id.*)   As a result, Plaintiff asserts that he was "prevented from filing suit for twenty months, due to being misled by the Defendants in direct statements to him" and in public statements to the press.  (*Id.* at 7.)  The complaint however, in the very paragraph cited by Plaintiff in his response, claims that he was "unable to *appeal* for over twenty months" due to the never-ending investigation.  (ECF No. 12:25) (emphasis added).  In other words, the complaint alleges that by assuring Plaintiff the investigation was ongoing and would eventually close, the Defendants interfered with Plaintiff's ability to appeal the University's decision, because no decision was reached.  But even if that is true, the complaint says nothing about this impacting Plaintiff's ability to file suit on time.  *See again Roberson,* 399 F.3d at 795 (holding that the university's ongoing adjudication of the plaintiff's case had no bearing on when the plaintiff needed to file suit before his claim was time-barred).  The Defendants' alleged words and conduct relate to the assurances they made to Plaintiff that an internal University-led investigation was underway.  There is no indication that the Defendants promised, for example, to forego a statute of limitations defense, or to pay Plaintiff a settlement, or to convince him not to pursue legal remedies.  *See Hardcastle*, 170 S.W.3d at 85 (offering examples of conduct supporting the invocation of equitable estoppel, noting that "[e]vidence of vague statements or ambiguous behavior by a defendant will not carry the day for a plaintiff asserting equitable estoppel").  Plaintiff has not carried his burden of identifying specific inducements that the Defendants knew or should have known would delay his filing suit.

Moreover, Plaintiff has not demonstrated that, despite the delay, he exercised diligence in bringing his suit, which he stresses was predicated on the Defendants' failure to provide him due process through a good faith investigation and the requisite hearings.   Plaintiff simply points to

---

[5] The Court does not find reference in the complaint to a letter by Anderson dated October 14, 2017, but assumes Plaintiff is referring to the Notice of Complaint, which, according to Plaintiff, was issued on October 16, 2017.  (ECF No. 12:14.)  The Court also cannot find in the complaint the language that is quoted here by Plaintiff from Anderson's letter.

the Defendants' alleged inducements and concludes "[n]one of these acts suggest a lack of diligence on the part of the Plaintiff." (ECF No. 28, 7.) However, the complaint offers no evidence of Plaintiff's purported diligence beyond his cooperation with the investigation. (ECF No. 12:17.) For example, Plaintiff does not allege that he took initiative to inquire about the status of the investigation at any point in time, nor that any additional communication between himself and the University took place following the transmission of Anderson's e-mail on January 22, 2018. It was through this e-mail Plaintiff learned that the investigation was still ongoing and that he was being denied a hearing until his case reached appeal. Despite these admissions from Anderson, which, as the Court found above, put Plaintiff on notice of his alleged rights violations, there is no evidence that Plaintiff took any action to further discover the basis of his claims or to protect his rights. Instead, he waited another nineteen months before filing suit. Plaintiff has not established that equitable estoppel should extend the statute of limitations in his case to prevent a Rule 12(b)(1) dismissal.

### ii.    Equitable Tolling

Unlike other state and federal courts, Tennessee does not recognize the doctrine of equitable tolling in civil cases. *Redwing*, 363 S.W.3d at 459. Therefore, equitable tolling cannot be applied to Plaintiff's Title IX or Section 1983 claims.

### iii.    Fraudulent Concealment

The Defendants argue at length that the doctrine of fraudulent concealment should not toll the statute of limitations in Plaintiff's case. *See e.g.* (ECF No. 18, 10) (citing ECF No. 12:73-77); (ECF Nos. 33, 4-7; 29-1, 10-11; 30-1, 10-11). The Court is wary of considering this argument because Plaintiff never overtly raises it. Nonetheless, to the extent Plaintiff does argue for fraudulent concealment, it should be denied.

16

While fraudulent concealment shares many of the same attributes as the doctrine of equitable estoppel, Tennessee courts consider it a free-standing exception to the statute of limitations. *Redwing*, 363 S.W.3d at 461 (Tenn. 2012). A plaintiff seeking to invoke the doctrine of fraudulent concealment must allege:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* at 462–63 (internal quotations and citation omitted). As with equitable estoppel, a plaintiff invoking fraudulent concealment must also demonstrate that he exercised diligence and reasonable care in pursuing his claim. *Id.* at 463. Failure by the plaintiff to plead due diligence prevents the court from tolling the statute of limitations based on fraudulent concealment. *Resolution Tr. Corp. v. Wood*, 870 F. Supp. 797, 812 (W.D. Tenn. 1994).

While the Court finds that Plaintiff has not "state[d] with particularity the circumstances constituting" fraud in his case, as required by Fed. R. Civ. P. 9(b), a careful analysis of Plaintiff's claims that the Defendants concealed information and misled him, is unnecessary for the Court to undertake here. Having already found that Plaintiff failed to demonstrate that he exercised diligence in pursuing his claim, the Court need not consider any further the issue of fraudulent concealment. *Resolution Tr. Corp.*, 870 F. Supp. at 812. Plaintiff has not established that equitable estoppel, equitable tolling, or fraudulent concealment should be applied in his case. By filing suit on August 5, 2019, Plaintiff's Title IX and Section 1983 claims were untimely and should be dismissed because no tolling doctrine applies that would suspend the running of the statute of limitations.

### 3.   Breach of Contract Claim Against Defendants Anderson and Dr. Rudd

Finally, the Court considers Plaintiff's breach of contract claim against Defendants Anderson and Dr. Rudd, which is found in Count III of the complaint.  As discussed above, Plaintiff clarified that his breach of contract claim was "explicitly addressed" to Anderson and Dr. Rudd in their individual capacities, not against the University.  (ECF No. 28, 1-2.)  Anderson and Dr. Rudd (herein also "Defendants") argue that Plaintiff failed to state an adequate breach of contract claim against them and as a result, Count III of his complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF Nos. 29-1, 4-5 & 30-1, 4-5.)  Specifically, the Defendants contend that Plaintiff clearly alleges a contractual relationship existed between himself and the University, but the complaint does not allege that Plaintiff had an express or implied contractual relationship with either Anderson or Dr. Rudd individually.  (*Id*.)  However, Plaintiff never addresses Defendants' argument in his response.  Instead he asserts, for the first time, that the Defendants' conduct amounted to unlawful procurement of contract breach, not a claim for breach of contract.  (ECF No. 39, 6-7.)

In Tennessee, breach of contract and procurement of breach of contract are two separate claims.  Establishing a breach of contract claim requires the plaintiff to allege the existence of an enforceable contract, non-performance amounting to a breach, and damages caused by the breach. *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 689 (M.D. Tenn. 2018).  Procurement of breach, on the other hand, has seven elements, requiring the plaintiff to show a conflict of interest agreement, the defendant's knowledge of that agreement, his intention to affect a breach of the agreement, and his malicious action, which was the proximate cause of actual breach and resulted in actual

damages to the plaintiff.  *Hauck Mfg. Co. v. Astec Indus., Inc*., 376 F. Supp. 2d 808, 832 (E.D. Tenn. 2005).[6]

"To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).  Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Lawson v. Huerta*, 692 F. App'x 790, 794 (6th Cir. 2017) (holding that Rule 8 "require[s] no more" than a claim and the factual basis for that claim).  The purpose of Rule 8 is simply to ensure all parties have adequate notice of each side's claims and to allow an adequate development of the facts so the case can be decided on its merits.  *Id.* (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Courts are only required to take well-pleaded facts as true.  *Lewis v. ACB Bus. Servs., Inc*., 135 F.3d 389, 405 (6th Cir. 1998).  The mandate for courts "to liberally construe plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions."  *Id*. (internal quotations and citation omitted).

However, that is precisely what Plaintiff did here.  As the Defendants argue, Plaintiff's claim for procurement of contract breach was absent from his complaint and should be dismissed. Plaintiff however, contends that his claim for unlawful procurement of contract breach was not raised for the first time in response to the motions to dismiss, stating: "While possibly not clear, there is a claim made and facts as pled herein constitute [sic] a claim for relief as the interference with contract [sic]." (ECF No. 39, 6.)  This overlooks the basic requirements of a valid pleading.

---

[6] In Tennessee, the common law tort of contract interference and the statutory action for unlawful procurement of breach of contract, Tenn. Code. Ann. § 47-50-109, have the same elements and serve as alternate theories of recovery. *Hauck*, 376 F. Supp. 2d at 832.

Count III of the complaint does not allege that Anderson took any specific actions that would make him liable to Plaintiff, and to the extent Dr. Rudd's involvement is described, Plaintiff merely alleges that he "breached express and/or implied agreement(s) with Plaintiff."   (ECF No. 12:70.)  Plaintiff also claims to be entitled to "counseling and therapy costs incurred as a result of being traumatized by the conduct of the University of Memphis, Kenneth Anderson, and M. David Rudd" but offers no description of their conduct.  (*Id.* at 71.)  The complaint says nothing about how either Anderson or Dr. Rudd interfered with or procured the breach of the contract that existed between Plaintiff and the University.   No allegation of Anderson or Dr. Rudd's tortious interference surfaced until Plaintiff filed his Response to the Defendants' motions to dismiss. Because procurement of breach is a different cause of action in Tennessee than simple breach of contract, and because Plaintiff never asserted it in his complaint, it should be dismissed.  *See Everson v. Leis*, 556 F.3d 484, 497–98 (6th Cir. 2009) (affirming the district court's dismissal of a claim that was asserted for the first time in the plaintiff's response).

## CONCLUSION

For the reasons stated above, Defendants' originally filed motions to dismiss (ECF Nos. 9, 24, & 25) are **DENIED** as **MOOT**, the Defendants' subsequently filed motions to dismiss the Amended Complaint (ECF Nos. 17, 29, & 30) are **GRANTED,** and Plaintiff's claims are hereby **DISMISSED** with prejudice.


**IT IS SO ORDERED** on this 30th day of April 2020.

*s/ John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE